UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEDURA WATKINS,

    Plaintiff,

v.

ROBERT H. HEALY, *et al.*,

    Defendants.

_____/

Case No. 17-cv-13940
Hon. Matthew F. Leitman

## ORDER DENYING DEFENDANT ROBERT H. HEALY'S MOTION TO ABSTAIN (ECF #8)

In 1976, Plaintiff Ledura Watkins was convicted of murder and sentenced to life in prison. In this action, Watkins asserts that Defendants Robert H. Healy, Neil Schwartz,[1] and Ronald Badaczewski violated his constitutional rights when they suppressed favorable evidence, fabricated evidence, maliciously prosecuted him, and conspired against him during the murder investigation and trial. (*See* Compl., ECF #1.) Watkins also maintains that Defendant the City of Detroit is liable for Defendants Schwartz and Badaczewski's constitutional violations because the City had a custom or policy authorizing those actions and/or because it failed to adequately train Defendants Schwartz and Badaczewski. (*See id.*) Defendant Healy

---

[1] Schwartz is now deceased. Watkins has therefore formally brought his claims related to Schwartz' conduct during the murder investigation and trial against "John Ferguson, Esq., Personal Representative of the Estate of Neil Schwartz, deceased."

1

has moved the Court to abstain from hearing and to stay this action pending the resolution of a state court action in which Watkins seeks compensation under a Michigan statute for wrongful imprisonment. (*See* Mot. to Abstain, ECF #8.) The other Defendants have concurred in the relief sought in Healy's motion. (*See* ECF #10.) For the reasons stated below, the Court **DENIES** the motion and will not abstain or stay this action.[2]

# I

## A[3]

On September 6, 1975, a Detroit school teacher named Yvette Ingram was found shot to death in her home. (*See* Compl. at ¶12, ECF #1 at Pg. ID 4.) Healy, then an Assistant Prosecuting Attorney employed by the Wayne County Prosecutor's Office, and Schwartz, then a Sergeant employed by the Detroit Police Department (the "DPD"), investigated the murder of Ingram. (*See id.* at ¶¶ 5, 7, 18, Pg. ID 3, 4, 6.) Following the investigation, police arrested Watkins, and the Wayne County Prosecutor charged Watkins with murdering Ingram. (*See id.* at ¶¶ 43-44, 51, Pg. ID 11-13.)

Watkins was tried in Michigan's Recorder's Court. (*See id.* at ¶¶ 51, 81, Pg. ID 12-13, 19.) At trial, the prosecution relied on two primary pieces of evidence:

---

[2] The Court has determined that it may properly resolve Healy's motion without a hearing. *See* E.D. Mich. L.R. 7.1(f).

[3] The facts in Section I(A) are taken from Watkins' Complaint in this action.

(1) testimony by an acquaintance of Watkins that he saw Watkins shoot Ingram and (2) expert testimony from Badaczewski, then an evidence technician with the DPD, that a hair found on Ingram matched Watkins' hair. (*See id.* at ¶¶ 65-70, 77, Pg. ID 15-17.)

On March 16, 1976, a jury convicted Watkins of first degree murder. (*See id.* at ¶81, Pg. ID 19.) On April 15, 1976, the state trial court sentenced Watkins to a term of life imprisonment without the possibility of parole. (*See id.*)

**B**

In 2017, Watkins filed a motion for relief from judgment in state court. (*See* ECF #8-7.) In that motion, Watkins argued that the state court should vacate his conviction because, among other reasons, (1) the witness who testified that he saw Watkins shoot Ingram recanted that testimony and (2) Badaczewski's testimony was unreliable, flawed, and failed to comport with the Federal Bureau of Investigation's revised standards for hair comparisons. (*See id.*) The Wayne County Prosecutor's Office agreed that Watkins' motion for relief from judgment should be granted. The prosecutor stipulated that Badaczewski's hair analysis was unreliable and that a retrial would probably result in Watkins' release. (*See* ECF #8-8.) On June 15, 2017, the state court entered a stipulated order granting Watkins' motion for relief from judgment and dismissing the case without prejudice. (*See id.*)

## C

On July 25, 2017, Watkins filed a lawsuit against the State of Michigan in the Michigan Court of Claims under Michigan's Wrongful Imprisonment Compensation Act (the "WICA"), Mich. Comp. Laws § 691.1751 *et seq.* (the "Court of Claims Action"). (*See* Ct. of Claims Compl., ECF #8-9.) The Michigan Legislature enacted the WICA to compensate formerly convicted persons who could show that new evidence established their innocence. *See* Mich. Comp. Laws § 691.1755(1) (requiring that a plaintiff prove as one element of a WICA claim that "[n]ew evidence demonstrates that the plaintiff did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the conviction . . . ."). The WICA sets compensation for a successful plaintiff at $50,000 for each year imprisoned. *See id.* The Michigan Court of Claims has exclusive jurisdiction over claims under the WICA. *See* Mich. Comp. Laws § 691.1753.

Watkins alleges in the Court of Claims Action that new evidence, including the eye-witness's recantation of his testimony and the unreliability of Badaczewski's analysis and testimony, establishes his innocence. Thus, Watkins contends, he is entitled to compensation under the WICA. (*See* Ct. of Claims Compl., ECF #8-9.)

Discovery has begun in the Court of Claims Action. Among other things, Watkins has taken the depositions of Healy and Badaczewski in that case.

**D**

On December 6, 2017, Watkins filed this action against Healy, Schwartz, Badaczewski, and the City of Detroit. (*See* Compl., ECF #1.) In Count I of the Complaint, Watkins asserts the following constitutional violations under 42 U.S.C. § 1983 against the Defendants:

1. Healy, Schwartz, and Badaczewski (the "Individual Defendants") fabricated evidence against him. (*See id.* at ¶113, Pg. ID 29-32.)

2. Schwartz and Badaczewski failed to disclose exculpatory evidence in violation of their obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). (*See id.*)

3. Schwartz maliciously prosecuted Watkins. (*See id.*)

4. Healy and Schwartz conspired to fabricate evidence. (*See id.*)

5. The City of Detroit had a custom or policy that authorized, condoned, tolerated, and approved illegal and unconstitutional actions by the DPD officers and staff. (*See id.*)

6. The City of Detroit failed to provide adequate training to its police officers. (*See id.*)

Watkins also asserts common law malicious prosecution claims against Schwartz and Healy in Counts II and III, respectively, and an intentional infliction

of emotional distress claim against all of the Defendants in Count IV. (*See id.* at Pg. ID 34-38.)

On February 20, 2018, Healy filed a motion in which he asked this Court to abstain and stay this action pending resolution of the Court of Claims Action pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and its progeny. (*See* Mot. to Abstain, ECF #8.) The other Defendants thereafter filed statements concurring in the Motion to Abstain. (*See* ECF #10.)

## II

### A

Federal courts have a "virtually unflagging obligation" to hear and adjudicate claims falling within their original jurisdiction. *Colorado River Water Conservation Dist.*, 424 U.S. 800 at 817. However, the Supreme Court in *Colorado River* recognized a limited exception to this obligation: in certain "exceptional" circumstances, a federal court may abstain to a parallel state court proceeding. *Id.*

Whether it is proper to abstain under *Colorado River* is a two-step inquiry. First, a court must determine if the federal and state proceedings are "parallel." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). Second, if the proceedings are parallel, a court must consider and apply eight factors to determine if abstention is appropriate: (1) whether the state court has assumed jurisdiction over any *res* or property; (2) whether the federal forum is less convenient to the parties;

(3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *See id.* at 340-41. "These factors, however, do not comprise a mechanical checklist. Rather, they require a careful balancing of the important factors as they apply in a given case depending on the particular facts at hand." *Id.* at 341 (internal quotations omitted).

"When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). Finally, the Supreme Court has "emphasize[d] that our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Id.* at 25-26 (emphasis original).

**B**

The Court declines to abstain under *Colorado River* because this action is not parallel to the Court of Claims Action. To be considered parallel, the federal and state proceedings must be "substantially similar." *Romine*, 160 F.3d at 340. Actions are substantially similar "where (1) the parties are substantially similar and (2) [the plaintiff's] claims against the [defendants] are predicated on the same allegations as to the same material facts." *Id.* Neither of these circumstances exist here.

First, the Defendants in this action are not substantially similar to the defendant in the Court of Claims Action. The State of Michigan is the sole defendant in the Court of Claims Action; it is not a defendant in this action. The Defendants here are (1) three individuals who were not employed by the State of Michigan and (2) the City of Detroit, a municipal entity that is distinct from the State of Michigan. Given the difference in defendants, the parties in the Court of Claims Action and this action are not substantially similar. *See Crawley v. Hamilton Cty. Comm'rs,* 744 F.2d 28, 31 (6th Cir. 1984) (concluding that officials of Hamilton County, Ohio named as defendants in a federal action were not substantially similar to officials of the City of Cincinnati, Ohio who were named as defendants in a state action).

Second, the claims in this action and the Court of Claims Action are not predicated on the same allegations as to the same material facts. Indeed, the facts

8

that are "material" to both actions differ sharply. "A fact is material" if, among other things, "proof of that fact would have effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties…." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citations and internal quotations omitted). The elements of the WICA claim in the Court of Claims Action and the elements of the claims in this action vary widely, and thus many of the material facts are different in each action.

Watkins' WICA claim requires him to prove "by clear and convincing evidence" that: (1) he was "convicted of 1 or more crimes . . . and sentenced to imprisonment"; (2) his "judgment of conviction was reversed or vacated and either the charges were dismissed or [he] was determined on retrial not to be guilty"; and (3) "[n]ew evidence demonstrates that [he] did not perpetrate the crime . . . ." Mich. Comp. Laws § 691.1755(1). The first two elements do not appear to be meaningfully in dispute in the Court of Claims Action. Therefore, the key material factual issue in that action is whether Watkins murdered Ingram.

The disputed material facts at issue here are both different and broader because the elements of Watkins' claims here are different and broader. For example, several of Watkins' claims in this Court have as an element that the Individual Defendants acted with a culpable state of mind. *See e.g.*, *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (noting that "[t]he basis of a fabrication-of-

9

evidence claim under § 1983 is an allegation that a defendant knowingly fabricated evidence against him...") (internal quotations omitted)); *Newman v. Twp. of Hamburg*, 773 F.3d 769, 773 (6th Cir. 2014) (noting that under Michigan law, a malicious prosecution claim requires that plaintiff "show malice") (internal quotations omitted)). Likewise, some of Watkins' claims here involve causation questions that do not bear on Watkins' innocence. *See, e.g.*, *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (holding that a constitutional malicious prosecution claim requires a showing that the defendant "made, influenced, or participated in the decision to prosecute"); *Dalley v. Dykema Gossett*, 287 Mich. App. 296, 321, 788 N.W.2d 679, 694 (2010) (noting that an intentional infliction of emotional distress claim requires that defendant's conduct caused severe emotional distress). Additionally, Watkins' conspiracy claim necessarily depends on whether there was an agreement to injure him by unlawful action. *See Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) ("A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action." (internal quotations omitted)). Thus, many of the key factual questions here relate to the Individual Defendants' states of mind, whether the Individual Defendants' actions caused Watkins' prosecution or injury, and whether an agreement existed – factual questions that are not presented in the Court of Claims Action.

Moreover, Watkins' claim against the City of Detroit turns, in part, upon his allegation that the City had a particular custom or practice, *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), and that issue, too, is absent from the Court of Claims Action. Accordingly, this action will present important factual issues concerning the City of Detroit's practices that are absent from the Court of Claims Action.

Finally, when determining whether two actions are parallel, courts also consider the similarity of the theories of recovery in each proceeding. *See, e.g.*, *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994) (highlighting the "very different theories advanced" by the parties in the state and federal actions to determine that the proceedings were not parallel); *Gentry v. Wayne Cty.*, No. 10-CV-11714, 2010 WL 4822749, at *2 (E.D. Mich. Nov. 22, 2010) ("[W]hen the state and federal cases present different theories of recovery, courts do not generally characterize the proceedings as 'parallel.'"). As described above, the theories of recovery in this action and the Court of Claims Action differ markedly. These differences underscore that the actions are not parallel.

## C

Even if the Court had concluded that the proceedings were parallel, the Court would still decline to abstain because the balance of the relevant factors weigh against abstention. The Court considers each factor in turn.

(1) *whether the state court has assumed jurisdiction over any res or property*: This factor weighs against abstention. There does not appear to be *res* or property at issue in the Court of Claims Action.

(2) *whether the federal forum is less convenient to the parties*: This factor weighs against abstention. Defendants do not argue that this forum is less convenient. (*See* Mot. to Abstain, ECF #8 at Pg. ID 75.)

(3) *the avoidance of piecemeal litigation*: This factor weighs against abstention. "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Romine*, 160 F.3d at 341. As described above, the issues presented in this action and the Court of Claims Action are far from identical. Moreover, the claims in the two actions will be decided under differing burdens of proof – preponderance of the evidence here and clear and convincing evidence in the Court of Claims Action. These different burdens highlight that the fact finders in the two actions will not be deciding the same questions.

(4) *the order in which jurisdiction was obtained*: This factor weighs in favor of abstention. The Court of Claims Action was filed about five months before this action.

(5) *whether the source governing law is state or federal*: This factor weighs against abstention. In this action, Watkins asserts federal constitutional claims under

42 U.S.C. § 1983 (in addition to his state law claims). The presence of those federal claims weighs against abstention in this case.

(6) *the adequacy of the state court action to protect federal plaintiff's rights*: This factor counsels heavily against abstention. The Michigan Court of Claims cannot hear the bulk of the federal claims asserted by Watkins in this action. As relevant here, that court has jurisdiction over "any claim . . . against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419. As the Defendants concede, the City of Detroit, a municipality, does not fall within that grant of jurisdiction. (*See* Mot. to Abstain, ECF #8 at Pg. ID 76.) Schwartz and Badaczewski, as Detroit Police Officers, likewise do not fall within the scope of that jurisdiction.[4] Thus, the Court of Claims cannot hear Watkins' federal claims against most (if not all[5]) of the Defendants and, accordingly, cannot adequately protect Watkins' federal rights. Finally, the amount of relief available to Watkins is limited under the WICA in the Court of Claims Action, and he faces no similar limit on his recovery for any violation of federal law he may establish here.

---

[4] Even if Schwartz and Badaczewski were employed as law enforcement officers by the State of Michigan, the Court of Claims would still lack jurisdiction over Watkins' claims against them. *See Burnett v. Moore*, 314 N.W.2d 458, 460 (Mich. Ct. App. 1981) (holding that state police trooper was not a state officer for purposes of Court of Claims jurisdiction).

[5] In addition, it seems unlikely that the Court of Claims could hear Watkins' federal claims against Healy, an assistant prosecuting attorney, because he does not appear to be a State "officer." *See Burnett, supra*.

13

(7) *the relative progress of the state and federal proceedings*: This factor weighs slightly in favor of abstention. Unlike in this action, discovery has commenced in the Court of Claims Action.

(8) *the presence or absence of concurrent jurisdiction*: This factor weighs against abstention. As noted above, the Michigan Court of Claims could not hear most (if not all) of Watkins' claims in this case.

The balance of these factors counsels against abstention in this case. Six of the eight factors weigh against abstention. And the two factors that favor abstention – the fourth and seventh – do so only slightly. The factors that weigh against abstention, in contrast, tip heavily in that direction. For these reasons, the Court would not abstain even if the two actions were parallel.

### III

For the reasons explained above, the Court **DENIES** Defendant Healy's motion to abstain (ECF #8).

**IT IS SO ORDERED.**

                                            s/Matthew F. Leitman
                                            MATTHEW F. LEITMAN
Dated: March 26, 2018                 UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 26, 2018, by electronic means and/or ordinary mail.

                                                s/Holly A. Monda
                                                Case Manager
                                                (810) 341-9764