UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEDURA WATKINS,

      Plaintiff,

v.

ROBERT H. HEALY, *et al.*,

      Defendants.

Case No. 17-cv-13940
Hon. Matthew F. Leitman

_____/

## OPINION AND ORDER DENYING DEFENDANT ROBERT H. HEALY'S MOTION TO DISMISS (ECF #34)

In 1976, Plaintiff Ledura Watkins was convicted of first-degree murder in state court and sentenced to life in prison without the possibility of parole. In 2017, the state trial court vacated Watkins' conviction and released him from custody based on a finding that certain expert testimony admitted against Watkins at trial – asserting that Watkins' hair matched a hair found on the victim – was unreliable. Watkins has now filed this civil-rights action against the City of Detroit and certain individuals involved in his arrest and prosecution, including Defendant Robert H. Healy, a former state-court prosecutor. Watkins alleges that Healy fabricated evidence against him and maliciously prosecuted him. Healy filed a motion to dismiss Watkins' claims on January 25, 2019. (*See* Mot. to Dismiss, ECF #34.) For the reasons that follow, Healy's motion is **DENIED**.

# I

On September 6, 1975, "a Detroit school teacher and reputed drug dealer" named Yvette Ingram "was found shot to death in her home" in Detroit. (Am. Compl. at ¶12, ECF #30 at Pg. ID 7490.) Roughly one month later, the City of Highland Park Police took a man named Travis Herndon into custody on an unrelated offense. (*See id.* at ¶15, Pg. ID 7491.) While Herndon was in custody, he "told a Highland Park police officer … that he [Herndon] had information regarding the Ingram murder." (*Id.*) Herndon said that Watkins "robbed and killed [] Ingram on the orders of Highland Park police officer[] Gary Vazana." (*Id.* at ¶16, Pg. ID 7491.)

On October 21, 1975, Healy and Neil Schwartz, then a sergeant with the Detroit Police Department, "interrogated [Herndon] at length about the [] Ingram murder." (*Id.* at ¶17, Pg. ID 7491.) During that interrogation, Herndon initially provided a different version of events than the version that he recounted to the Highland Park police. Herndon told Healy and Schwartz that *he* and Watkins, not Watkins alone, killed Ingram on instructions from Vazana. (*See id.* at ¶20, Pg. ID 7492.) More specifically, Herndon said that "he and Watkins drove Vazana's car" to Ingram's home and "used Vazana's pistol to kill Ingram." (*Id.*)

At some point during the interrogation, "Healy left the room and [then] returned, passing a note to Schwartz." (*Id.* at ¶21, Pg. ID 7492.) Schwartz read the note and then handed it to Herndon. (*See id.*) "The note indicated that Vazana had

been found shot to death in his residence."[1] (*Id.*)  Healy thereafter left the room a second time "while Schwartz attempted to have Herndon make a tape-recorded statement" that implicated Watkins in Ingram's murder. (*Id.* at ¶22, Pg. ID 7493.)

Herndon then changed his story again and offered a third version of events. Herndon "specifically told Schwartz that his earlier statement about [] Watkins' involvement [in Ingram's murder] was not true." (*Id.* at ¶23, Pg. ID 7493.)  Herndon then said that Vazana, *not Watkins*, drove Herndon to Ingram's home and that Vazana, *not Watkins*, shot and killed Ingram. (*See id.*)  Schwartz then left the room to consult with Healy. (*See id.* at ¶24, Pg. ID 7493.)

According to Watkins, "while outside the interrogation room, Healy and Schwartz conspired and agreed to frame [Watkins for Ingram's murder] by fabricating evidence that Herndon and Watkins killed [] Ingram." (*Id.*)  "When they returned, Healy told Herndon that he and Schwartz wanted [] Watkins for the Ingram murder because they believed he was involved and that [Watkins] likely murdered [] Vazana." (*Id.* at ¶25, Pg. ID 7493.)  "Herndon again told Healy and Schwartz that

---

[1] Healy vigorously disputes this chronology.  He argues that based on the time of Vazana's death, and when police first learned that Vazana had been killed, it was impossible for Herndon to have learned about Vazana's death from Schwartz and Healy during this interrogation. (*See* Mot. to Dismiss, ECF #34 at Pg. ID 7770-71.) However, for the purposes of the motion to dismiss only, the Court will accept the timeline of events as Watkins' plausibly alleges in the Amended Complaint.

Watkins had nothing to do with the murder[] and that Herndon and Vazana [had] killed Ingram." (*Id.* at ¶26, Pg. ID 7493.)

Healy and Schwartz then began to threaten Herndon. They told Herndon "that they would charge [him] with the Ingram murder unless he implicated Watkins." (*Id.* at ¶27, Pg. ID 7493-94.) Healy and Schwartz also threatened to charge Herndon with another, unrelated murder if he did not implicate Watkins. (*See id.* at ¶28, Pg. ID 7494.) "In the face of these threats …. [Herndon] agreed to testify against Watkins." (*Id.* at ¶29, Pg. ID 7494.)

Schwartz then "took the affirmative step of tape recording a statement from [] Herndon that implicated Watkins in [] Ingram's murder." (*Id.* at ¶30, Pg. ID 7494.) In that recording, Herndon said that he and Watkins had killed Ingram "on orders from [] Vazana." (*Id.* at ¶30 n.1, Pg. ID 7494.) "Schwartz deliberately chose not to record Herndon's statement that [] Vazana[] murdered [] Ingram[] and that [] Watkins had nothing to do with the murder." (*Id.* at ¶33, Pg. ID 7495.)

"One day after procuring Herndon's made-up statement, Schwartz filed a Warrant Request [for Watkins] with the Wayne County Prosecutor's Office." (*Id.* at ¶39, Pg. ID 7496.) Healy was not involved in the decision to seek a warrant for Watkins' arrest. (*See id.* at ¶40, Pg. ID 7496-97.) Instead, "Schwartz submitted [the warrant request] to the Prosecutor's Office and swore to facts in support of the warrant." (*Id.* at Pg. ID 7497.) Judge John Patrick O'Brien issued the arrest warrant

on October 22, 1975. (*See id.*)  Watkins was thereafter arrested for Ingram's murder pursuant to that warrant. (*See id.* at ¶44, Pg. ID 7497.)  The content of Herndon's incriminating statement was "the <u>sole basis</u> for probable cause for Watkins' arrest." (*Id.* at ¶32, Pg. ID 7495; emphasis in original.)  At that time, "there was no other evidence linking Watkins to the crime." (*Id.*)

At Watkins' preliminary examination, Healy elicited testimony from Herndon that he and Watkins killed Ingram at Vazana's request. (*See id.* at ¶32, Pg. ID 7495.) The state district court then bound Watkins "over for trial based on Herndon's [] testimony." (*Id.*)

Watkins' murder trial began in March of 1976. (*See id.* at ¶51, Pg. ID 7498.) Healy again acted as the state-court prosecutor. (*See id.* at ¶52, Pg. ID 7499.)  At the trial, the prosecution relied on two primary pieces of evidence: (1) Herndon's testimony that he and Watkins killed Ingram (*see id.* at ¶¶ 56-64, Pg. ID 7499-7501) and (2) expert testimony from evidence technician Ronald Badaczewski that a hair found on Ingram's pants was "microscopically similar [to]" and "was a match to" Watkins' hair. (*Id.* at ¶¶ 66-67, Pg. ID 7501.)  The hair evidence was "[t]he only physical evidence linking [] Watkins to the scene [of the crime]." (*Id.* at ¶65, Pg. ID 7501.)

On March 16, 1976, a jury convicted Watkins of first-degree murder. (*See id.* at ¶81, Pg. ID 7504.)  The state trial court then sentenced Watkins "to a term of life in prison without the possibility of parole." (*Id.* at Pg. ID 7505.)

Numerous appeals and post-conviction motions for relief from judgment followed.  In 1980, during an evidentiary hearing on one of Watkins' motions, Herndon testified that both his tape-recorded statement implicating Watkins and his trial testimony to that effect were false, that Healy and Schwartz had pressured him into implicating Watkins, and that Vazana, not Watkins, murdered Ingram. (*See id.* at ¶86, Pg. ID 7505.)  The state trial court concluded that Herndon's recantation was not credible, and it denied Watkins' motion. (*See* 5/21/1981 State-Court Order, ECF #34-26.)

In 2016, Watkins filed a new motion for relief from judgment in the state trial court. (*See* Am. Compl., ECF #12 at ¶100, Pg. ID 7510.)  In that motion, Watkins challenged the reliability and admissibility of the hair evidence introduced at his trial – the only physical evidence linking him to the Ingram murder. (*See id.*)  The Wayne County Prosecutor's Office then stipulated to the following facts in state court:

- New Federal Bureau of Investigation standards of hair comparison "undermined" the hair analysis offered at Watkins' criminal trial;
- The prosecutor's office could not re-test the hair evidence because "[a]ll evidence pertinent to this case ha[d] been destroyed;"

- The new standards for hair-comparison evidence, and the inability to re-test the hair evidence, "ma[de] a different result probable on retrial;" and

- "Insufficient evidence exist[ed] to retry [Watkins]."

(*Id.* at ¶101, Pg. ID 7511; *see also* 6/15/2017, "Stipulated Order Granting [Watkins'] Successive Motion for Relief from Judgment and Dismissing Case without Prejudice," ECF #34-49.)  After stipulating to these facts, the prosecutor's office "move[d] the [state c]ourt to dismiss the case without prejudice." (6/15/2017 State-Court Order, ECF #34-49 at Pg. ID 9238.)  Based on the parties' stipulated facts and the motion by the prosecutor's office to dismiss the case, the state trial court granted Watkins' motion for relief from judgment, dismissed the murder charge against him without prejudice, and released him from custody. (*See id.*)

## II

On December 6, 2017, Watkins filed this civil-rights action against Healy, Schwartz' estate,[2] Badaczewski, and the City of Detroit. (*See* Compl., ECF #1.) Healy moved to dismiss the claims Watkins brought against him (*See* Mot., ECF #21), and the Court held a hearing on that motion on October 17, 2018.  The Court

---

[2] Schwartz passed away before Watkins filed this action.  Watkins' has brought his claims related to Schwartz' conduct against "John Ferguson, Esq., Personal Representative of the Estate of Neil Schwartz, deceased."

thereafter entered an order (1) directing Watkins to file an Amended Complaint and (2) terminating Healy's motion to dismiss without prejudice. (*See* Order, ECF #29.)

Watkins filed his Amended Complaint on December 12, 2018. (*See* Am. Compl., ECF #30.)  Relevant to the pending motion, Watkins brings the following claims against Healy:

- Fabrication of evidence in violation of the Fourth Amendment (Count I);

- Fabrication of Evidence in violation of the Due Process Clause of the Fourteenth Amendment (Count II);

- Malicious Prosecution in violation of the Fourth Amendment (Count III);

- Civil Conspiracy in violation of the Fourth Amendment (Count VIII);

- Civil Conspiracy in violation of the Fourteenth Amendment (Count IX); and

- Common law Malicious Prosecution (Count XV).

Healy moved to dismiss Watkins' amended claims against him on January 25, 2019. (*See* Mot. to Dismiss, ECF #34.)  The Court held a hearing on Healy's motion on July 22, 2019.

### III

Healy moves to dismiss the claims brought against him pursuant to Federal Rule of Civil Procedure 12(b)(6).  "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id*. When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV

Healy moves to dismiss Watkins' Fourth Amendment claims (Counts I, III, and VIII) on several grounds. The Court will address each in turn.

**A**

Healy first argues that Watkins' Fourth Amendment claims are barred by the applicable three-year statute of limitations.[3] (*See* Mot. to Dismiss, ECF #34 at Pg. ID 7758-63.) In the context of this argument, Healy divides Watkins' Fourth Amendment claims into two separate components: the first seeking damages for allegedly wrongful detention from the date of arrest through the end of Watkins' preliminary examination (the "Arrest Claim") and the second seeking damages for allegedly wrongful detention from the end of the preliminary examination through Watkins' conviction at trial (the "Pre-Trial Claim"). Healy insists that both of these Fourth Amendment claims accrued long before Watkins filed this action and are therefore time-barred. The Court disagrees.

**1**

Healy contends that the three-year limitations period on Watkins' Arrest Claim began to run in "October 1975" when Watkins was "arraign[ed]" on the arrest

---

[3] Section 1983 does not include its own statute of limitations. "In *Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985), the Supreme Court held that the appropriate statute of limitations to be applied in all section 1983 actions is the state statute of limitations governing actions for personal injury." *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988). Michigan's statute of limitations governing actions for personal injury is three years. *See id.* (citing Mich. Comp. Laws § 600.5805)). Therefore, the statute of limitations that applies to Watkins' Section 1983 claims is three years. *See id.*

"warrant." (*Id.* at Pg. ID 7759.) Healy rests this argument largely on the United States Supreme Court's decision in *Wallace v. Kato*, 549 U.S. 384 (2007).

In *Wallace*, the Supreme Court determined the date on which a claim seeking damages for a warrantless arrest accrues. In fixing the accrual date, the Supreme Court "look[ed] first to the common law of torts" because that law serves as an important "guide" in "defining the contours and prerequisites of a § 1983 claim." *Manuel v. City of Joliet*, --- U.S. ---, 137 S.Ct. 911, 920 (2017) (describing analysis in *Wallace*). The Supreme Court explained that plaintiff's claim in *Wallace* was in the nature of a common-law claim for "false imprisonment" because the plaintiff was seeking compensation for an arrest made in the absence of judicial process. *Wallace*, 549 U.S. at 389-90. And because "a false imprisonment ends once the victim becomes held *pursuant to [judicial] process*," *id.* at 389 (emphasis in original), the plaintiff's false imprisonment claim accrued when the state court issued process holding him over for trial:

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*— when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process. If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable

11

> must be based on a malicious prosecution claim and on the
> wrongful use of judicial process rather than detention
> itself. Thus, petitioner's contention that his false
> imprisonment ended upon his release from custody, after
> the State dropped the charges against him, must be
> rejected. It ended much earlier, when legal process was
> initiated against him, and the statute would have begun to
> run from that date, but for its tolling by reason of
> petitioner's minority.

*Id.* at 389–90 (footnotes, internal punctuation, and internal citations omitted; emphasis in original).

Healy's reliance on *Wallace* is misplaced. The Fourth Amendment claim in *Wallace* was fundamentally different from Watkins' Fourth Amendment claim here. Unlike the plaintiff in *Wallace*, Watkins was arrested pursuant to judicial process – an arrest warrant. Therefore, the false imprisonment paradigm applied by the Supreme Court in *Wallace* does not fit here. *See Winfrey v. Rogers*, 901 F.3d 483, 492-93 (5th Cir. 2018) (rejecting defendant's argument that plaintiff's Fourth Amendment claim seeking damages arising out of an arrest pursuant to a warrant "fits within *Wallace v Kato*").

Watkins' claim seeking damages for detention that resulted from judicial process – *i.e.*, from an arrest warrant – most closely resembles a common-law claim for "the tort of malicious prosecution." *Id.* (choosing the most analogous common-law tort claim for a Section 1983 claim seeking damages arising from an arrest pursuant to a warrant). And that has important consequences for the date on which

the claim accrued. At common law, a plaintiff asserting a malicious prosecution claim must show that the underlying criminal proceedings against him have terminated in his favor. *See Manuel*, 137 S.Ct. at 921 (internal quotation marks omitted) ("An element of [the] tort [of malicious prosecution] is the termination of the ... proceeding in favor of the accused"). For that reason, eight "Courts of Appeal [including the Sixth Circuit] have incorporated a 'favorable termination' element [into Section 1983 claims seeking damages for detention pursuant to judicial process] and so pegged the statute of limitations to the dismissal of the [underlying] criminal case." *Id.* at 921 and 917 n.4 (citing *Sykes v. Anderson*, 625 F.2d 294, 308-09 (6th Cir. 2010)).

Under this framework, Watkins' Arrest Claim accrued "when [his] criminal proceedings end[ed] in his favor" in 2017. *Winfrey*, 901 F.3d at 492-93 (determining accrual date for Fourth Amendment claim arising out of arrest made pursuant to a warrant); *see also Myers v. Koopman*, 738 F.3d 1190, 1193-95 (10th Cir. 2013) (holding that Fourth Amendment claim arising out of arrest pursuant to a warrant did not accrue until "the original [criminal] action terminated in favor of the plaintiff"). Because Watkins filed this action less than three years after his criminal proceedings terminated in his favor, his Arrest Claim is not time-barred.[4]

---

[4] There is admittedly some uncertainty as to whether, after the Supreme Court's decision in *Manuel*, the favorable termination of criminal proceedings remains an element of any Fourth Amendment claim. In *Manuel*, the Supreme Court clarified

Likewise, the Pre-Trial Claim did not accrue until the underlying criminal proceedings terminated in Watkins' favor.  As described above, the Pre-Trial Claim seeks damages for Watkins' detention pursuant to legal process – namely the state court's order detaining him for trial.  Therefore, like the Arrest Claim, the Pre-Trial claim is in the nature of a claim for malicious prosecution.  And for all of the reasons explained in Section IV(A)(1) above, such a claim does not accrue until the underlying criminal proceedings are terminated in the plaintiff's favor.  The Pre-Trial Claim thus did not accrue until the state trial court vacated Watkins' conviction

---

that while the Fourth Amendment protects against pre-trial deprivations of liberty effected through legal process, the Fourth Amendment "drops out" after "a trial has occurred." *Manuel*, 137 S.Ct. at 920 n.8.  There seems to be a reasonable argument that because the Fourth Amendment "drops out" once a trial has occurred, the result of the trial – and, more specifically, whether the trial has terminated in favor of the defendant (who later becomes a civil plaintiff in a Section 1983 action) – is irrelevant to whether a Fourth Amendment violation has occurred. *See Pagan-Gonalez v. Moreno*, 919 F.3d 582, 609 (1st Cir. 2019) (Barron, J. concurring) ("With respect to making favorable termination an element of the Fourth-Amendment-based tort … I see little reason to retain that element post-*Manuel*.  The termination of the prosecution – even if unfavorable to the defendant – cannot render the pre-trial seizure of the defendant constitutional if that seizure was unlawful from the inception.  No matter how the prosecution ends – including if it ends in a conviction – the defendant still has a right for there to have been a constitutionally valid basis for the pre-trial detention that he endured"). But because the Sixth Circuit currently recognizes favorable termination as an element of a Fourth Amendment claim that resembles a claim for malicious prosecution, *see Sykes, supra*, this Court feels compelled to recognize that element in the context of Watkins' Fourth Amendment claims.  Any decision to eliminate the favorable-termination element of claims like these must be made by the Sixth Circuit.

and dismissed the criminal charge against him in 2017. Because Watkins' filed this action within three years of that dismissal, the Pre-Trial Claim is not time-barred.

**3**

Healy offers an alternative argument as to why both the Arrest Claim and the Pre-Trial Claim are time-barred. Healy says that the law governing claims like these has changed since the time of Watkins' arrest and prosecution. Healy contends that while a plaintiff bringing these claims under today's law may have to show that the underlying criminal proceedings terminated in the plaintiff's favor, that showing was not required under the law as it existed in 1975-76. Healy argues that at that time, a plaintiff could have brought these claims even if the underlying criminal proceedings had not terminated in the plaintiff's favor. More specifically, Healy maintains that the favorable-termination element of these claims was first added by – and did not exist prior to – the Supreme Court's 1994 decision *in Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment … a § 1983 plaintiff must prove that the conviction or sentence has been [terminated in the plaintiff's favor]." *Id.* at 466-87. Healy asserts that *Heck* does not apply "retroactively" and that Watkins therefore could have brought the Arrest and Pre-Trial Claims in the 1970s even though he had not yet prevailed in his criminal case. (Mot. to Dismiss, ECF #34 at Pg. ID 7762-63.) Healy insists that because Watkins failed to bring these

claims while they were potentially viable (*i.e.*, during the three years between 1975-1978 for the Arrest Claim and 1976-1979 for the Pre-Trial Claim), the claims expired and were not somehow resurrected by *Heck*. (*See id.*) The Court disagrees – at least for now.

Healy has not yet persuaded the Court that Watkins could have brought the Arrest and Pre-Trial Claims in the 1970s without showing a successful termination of the underlying criminal proceedings. Indeed, there is reason to believe that between 1975-1979 Watkins could *not* have brought these claims without first prevailing in his underlying criminal proceedings. As Judge David Barron of the United States Court of Appeals for the First Circuit has explained (in a concurring opinion cited by Healy[5]), prior to 1994, claims seeking to recover damages for wrongful pre-conviction detention were "conceived as ones that sought remedies for violations of an individual's substantive due process rights." *Pagan-Gonalez v. Moreno*, 919 F.3d 582, 604 (1st Cir. 2019) (Barron, J. concurring). And in the context of those claims, courts "routinely required the plaintiffs … to show … that the prosecutions ultimately had been terminated in favor of the plaintiffs." *Id.* at 605.

Then, in 1994, the Supreme Court decided *Albright v. Oliver*, 510 U.S. 266 (1994). "*Albright* changed the legal landscape quite significantly." *Id.* at 606. In *Albright*, the Supreme Court held that plaintiffs challenging pre-conviction detention

---

[5] *See* Healy Reply Br., ECF #41 at Pg. ID 9877.

under Section 1983 must root their claims in a specific constitutional provision rather than in the Due Process Clause. *See id.* After *Albright*, ten circuit courts of appeals held that claims challenging pre-trial detention pursuant to judicial process should grounded in the Fourth Amendment, and, as noted above, eight of those appellate courts – including the Sixth Circuit – held that a plaintiff asserting a Fourth Amendment claim seeking damages for detention pursuant to judicial process must show that the underlying criminal proceedings terminated in his favor. *See Manuel*, 137 S.Ct. at 921 and 917 n.4 (citing *Sykes*, 625 F.2d at 308-09). Thus, there is reason to believe that in the Sixth Circuit (and elsewhere), successful termination has consistently been an element of claims like the Arrest and Pre-Trial Claims from the time before *Albright* through to present day.

Healy has not cited any case that persuades the Court that Watkins could have brought the Arrest or Pre-Trial Claims in the 1970s without having first prevailed in the underlying criminal proceedings. Healy directs the Court to the Supreme Court's decisions in *Allen v. McCurry*, 449 U.S. 90 (1980), *Haring v. Prossie*, 462 U.S. 306 (1983), and *Briscoe v. Lahue*, 460 U.S. 325 (1983). (*See* Mot. to Dismiss, ECF #34 at Pg. ID 7762.) He says that those cases demonstrate that around the time of Watkins' conviction, "the Supreme Court heard numerous § 1983 Fourth Amendment and Due Process challenges brought by convicted individuals" who had not had their convictions overturned. (*Id.*) But none of those cases squarely

addressed the question of whether a plaintiff had to prevail in underlying criminal proceedings before bringing a claim seeking damages for pre-conviction detention pursuant to judicial process. Instead, they addressed very different questions.[6] And Healy has not cited a single case from around the time of Watkins' conviction in which any federal court allowed a plaintiff to bring a Section 1983 action seeking damages for detention that resulted from judicial process without first having prevailed in the underlying criminal proceedings.[7] For all of these reasons, the Court is not yet persuaded that Watkins could have brought his Arrest or Pre-Trial Claims

---

[6] For example, the plaintiffs in in *Allen* and *Haring* brought civil claims arising out of allegedly unconstitutional *searches*, not wrongful arrest or pre-conviction detention. Moreover, *Allen* and *Haring* turned on issues of *res judicata* and collateral estoppel that are not relevant here. Similarly, in *Briscoe*, the plaintiff sought damages related to allegedly false testimony offered at his criminal trial, not wrongful arrest or pre-conviction detention. And *Briscoe* focused on the narrow issue of witness immunity. Furthermore, all of these decisions were issued in 1980 or later and thus could not have established in 1975 that Watkins could have sought damages for his pre-conviction detention without showing a favorable termination of his criminal case. For all of these reasons, the Court is not persuaded that *Allen*, *Haring*, or *Briscoe* firmly establishes that in 1975, a plaintiff could have brought a Section 1983 claim seeking damages for an arrest or pre-conviction detention without showing a favorable termination of the underlying criminal proceedings.

[7] Healy directs the Court to the Sixth Circuit's decision in *Mulligan v. Schlachter*, 389 F.2d 231 (1968). (*See* Healy Reply Br., ECF #41 at Pg. ID 9878.) In *Mulligan*, the Sixth Circuit held that claims against police officers arising out of an allegedly "unlawful arrest and search" were barred by the applicable statute of limitations. *Id.* at 233. But there is no indication in *Mulligan* that the arrest was made pursuant to a warrant. Thus, the claims in *Mulligan* appear like the claims in *Wallace*, and unlike the constitutional claims raised here.

in the 1970s even though he had not yet prevailed in his criminal case. Thus, the Court declines to dismiss Watkins' Fourth Amendment claims as time-barred.

**B**

Healy next asserts that even if Watkins' Fourth Amendment claims are not time-barred, they should be dismissed because Watkins has failed to show that the underlying criminal proceedings terminated in his favor. (*See* Mot. to Dismiss, ECF #34 at Pg. ID 7773.) Healy acknowledges that the state trial court vacated Watkins' criminal conviction and dismissed the charge against Watkins. But Healy insists that, as a matter of law, that ruling did not amount to a "favorable termination." (Healy Reply Br., ECF #41 at Pg. ID 9887.) The Court disagrees.

"Criminal proceedings are terminated in favor of the accused by the formal abandonment of the proceedings by the public prosecutor." *Wilkins v. DeReyes*, 528 F.3d 790, 802 (10th Cir. 2008) (quoting Second (Restatement) of Torts § 659(c)). That is exactly what Watkins contends happened here. Watkins plausibly alleges that the Wayne County Prosecutor's Office moved to dismiss the charge against him because there was "[i]nsufficient evidence" to support the conviction or to justify a re-trial. (6/15/2017 State-Court Order, ECF #34-49.) Watkins therefore plausibly alleges that the Wayne County Prosecutor's Office "formal[ly] abandon[ded]" the criminal proceedings against him. *Wilkins*, 528 F.3d at 802.

The Tenth Circuit's decision in *Wilkins* is instructive on this point. In *Wilkins*, prosecutors charged two men with capital murder. At the conclusion of both trials, the juries "could not reach a verdict and mistrials were declared." *Id.* at 795. The state "initially decided to retry" the men, but the trial court then determined that a key witness statement "would be excluded from evidence in the retrials as inadmissible hearsay." *Id.* "In light of the exclusions, the district attorney decided to dismiss the charges because insufficient evidence existed to go forward with the prosecutions. Accordingly, the district attorney dismissed the criminal cases … reserving the right to retry both men." *Id.*

The men later brought malicious prosecution claims against the investigating police officers under Section 1983. The officers argued that the claims failed as a matter of law because the underlying criminal proceedings had not terminated in the plaintiffs' favor. The Tenth Circuit rejected that argument and held that the prosecutor's dismissal of the charges constituted a "favorable termination." *Id.* at 804. The court explained that the dismissals "were the result of a judgment by the prosecutor that the case could not be proven beyond a reasonable doubt" because there was "insufficient evidence upon which to retry the defendants." *Id.* at 803. The court concluded that where a prosecutor dismisses charges because there is "insufficient evidence to convict," such a dismissal is "consistent with [a] favorable termination." *Id.* at 804.

In this action, as in *Wilkins*, the state-court prosecutor "decided to dismiss the charge[] because insufficient evidence existed to go forward with the prosecution[]." *Id.* at 795. And, as in *Wilkins*, because the prosecutor "concluded that without the excluded [evidence the prosecutor] could not prove the charged crimes beyond a reasonable doubt," the termination of Watkins' criminal proceedings "is consistent with [a] favorable termination." *Id.* at 804.

Healy counters that the dismissal of the criminal charge here did not amount to a favorable termination because the dismissal did not indicate that Watkins was actually innocent of the dismissed charge. (*See* Mot. to Dismiss, ECF #34 at Pg. ID 7773.) But "innocence" in this context is not strictly limited to factual innocence. Indeed, "the inability of a prosecutor to prove a case beyond a reasonable doubt at trial can be consistent with the innocence of the accused and can be deemed a favorable termination in favor of the accused." *Wilkins*, 528 F.2d at 803 (citing Restatement (Second) of Torts § 660, cmt. b). Moreover, "if the circumstances show that unreliable evidence has been suppressed and the prosecution then abandoned the case because of [a] lack of sufficient reliable evidence, that would be a circumstance where the dismissal is indicative of innocence." *Id.* "The dispositive inquiry is whether the failure to proceed implies a lack of reasonable grounds for the prosecution." *Id.* (internal quotation marks omitted). Here, Watkins plausibly alleges that the Wayne County Prosecutor's Office moved the state trial court to

dismiss the charge against him after it determined that there was a "lack of sufficient reliable evidence" and a "lack of reasonable grounds for the prosecution." *Id.* The dismissal is therefore "indicative of innocence," as that concept is understood in the context of constitutional claims for malicious prosecution. *Id.*

Healy next argues that the dismissal of the underlying criminal charge against Watkins was not a "favorable termination" because it was the result of a compromise between Watkins and the Wayne County Prosecutor's Office. Healy directs the Court to Section 660 of the Restatement (Second) of Torts. That section provides that where criminal charges are "withdrawn …. pursuant to an agreement of compromise with the accused," such a withdrawal is not a favorable termination. Restatement (Second) of Torts § 660(a). Healy contends that the state-court order vacating Watkins' conviction and dismissing the charge against Watkins confirms that Watkins obtained relief pursuant to a compromise agreement. But while the *facts* in that order were stipulated and agreed to, the prosecution *alone* moved to dismiss the criminal charge against Watkins. (*See* 6/15/2017 State-Court Order, ECF #34-49.) Moreover, Watkins' allegations do not suggest that the dismissal of the charge against him resulted from a compromise. At the summary judgment stage, Healy may present evidence, if there is any, that the dismissal resulted from a compromise, but at the pleadings stage, Watkins plausibly alleges that it did not.

Finally, Healy argues that the underlying criminal proceedings did not terminate in Watkins' favor because the charge against Watkins was dismissed without prejudice. But a dismissal without prejudice is a common manner in which prosecutors dismiss criminal cases, and the mere fact that the charge against Watkins was dismissed without prejudice does not preclude a finding that the termination was in Watkins' favor. Indeed, the prosecutor in *Wilkins* dismissed the charges in that case while "reserving the right to retry both men," and the Tenth Circuit nonetheless held that the proceedings terminated in the plaintiffs' favor. *Wilkins*, 528 F.3d at 795.

## C

Healy next argues that he is entitled to absolute immunity with respect to all of Watkins' Fourth Amendment claims. (*See* Mot. to Dismiss, ECF #34 at Pg. ID 7763-69.) The Court disagrees. Given Watkins' allegations, Healy is not entitled to absolute immunity at this time.[8]

---

[8] In the section of Healy's motion to dismiss in which he argues that he is entitled to absolute immunity with respect to Watkins' Fourth Amendment claims, Healy cites boilerplate law related to the doctrine of *qualified* immunity. (*See* Mot. to Dismiss, ECF #34 at Pg. ID 7763-64.) But the arguments that Healy makes under this section of his motion relate solely to *absolute* immunity, not qualified immunity. Healy has not developed any argument in his pending motion to dismiss that he is entitled to qualified immunity, and he has not provided the Court any basis to conclude that he is entitled to qualified immunity. To the extent that Healy believes that he may be entitled to qualified immunity, he may raise that argument on summary judgment.

"A government official is entitled to absolute immunity for performing functions 'intimately associated with the judicial phase of the criminal process.'" *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

In *Buckley*, the Supreme Court clarified the scope of prosecutorial immunity. It directed courts to use a "functional approach" when determining whether a prosecutor is entitled to absolute immunity. *Buckley*, 509 U.S. at 269. Under that approach, a prosecutor is entitled to absolute immunity only when he is "functioning as [an] 'advocate[]'" with respect to activities "intimately associated with the judicial phase of the criminal process." *Id.* at 271, 274. The Supreme Court explained that "[t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." *Id.* at 273. The court continued that "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer," the prosecutor is not acting as an "advocate" and is therefore not entitled to absolute immunity. *Id.* The

court further noted that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id.* at 274.

Applying those standards, the Supreme Court held in *Buckley* that a prosecutor was not entitled to absolute immunity from a claim that he fabricated evidence. *See id.* The Court stressed that the prosecutor's alleged fabrication of evidence took place before probable cause to arrest the suspect existed and before a grand jury returned an indictment against the suspect. *See id.* The court therefore concluded that the prosecutor was not acting as an "advocate" whose activities were "intimately associated with the judicial process" at the time of the alleged fabrication. *Id.* Instead, he was performing functions that were more investigative in nature. *See id.* Thus, he was not shielded by absolute immunity.

**2**

Watkins plausibly alleges that at the time Healy fabricated Herndon's statement, Healy (1) was performing "investigative functions" and (2) was not acting as an "advocate" with respect to activities "intimately associated with the judicial phase of the criminal process" *Id.* Healy's alleged fabrication of that statement took place before there was probable cause to arrest Watkins, before any charges were filed against Watkins, and before the judicial process against Watkins began. Indeed, Watkins' plausibly alleges that the alleged purpose of coercing Herndon into identifying Watkins as Ingram's killer was to create the evidence needed to establish

probable cause so that the judicial process could begin.  Simply put, Watkins fairly alleges that Healy was "perform[ing] the investigative functions normally performed by a detective or police officer," *id.* at 273, when Healy fabricated the evidence that led to Watkins' pre-conviction detention, and therefore Healy is not entitled to absolute immunity from Watkins' Fourth Amendment claims at the pleadings stage.

The Sixth Circuit's decision *Wendrow v. Michigan Dept. of Human Services*, 534 F. App'x 516 (6th Cir. 2013), confirms this conclusion.  *Wendrow* arose out of the alleged sexual abuse of AW, a minor.  During the investigation and before any arrests, two prosecutors interviewed AW's sibling, IW. *See id.* at 526.  Eventually, AW and IW's parents were arrested and faced charges arising out of the alleged abuse. *See id.* at 522-23.  The charges were later dismissed, and the parents then "initiated litigation … against the … prosecutors … involved in the sexual-abuse investigation and prosecution." *Id.* at 523.  Among other claims, the parents alleged that the prosecutors violated IW's constitutional rights during their interview of him. *See id.* at 526.  The district court held that the prosecutors were entitled to absolute immunity from these claims because they were interviewing a "witness" in preparation for trial. *Id.*  On appeal, the plaintiffs argued that there was a question of fact regarding whether prosecutors were "acting in an investigatory rather than prosecutorial role during [the] interview" and therefore whether the prosecutors were "entitled to absolute immunity." *Id.*

The Sixth Circuit agreed. That court explained that under *Buckley* "[a]ctivities undertaken in an effort to 'search[ ] for clues and corroboration that might give [the prosecutor] probable cause to recommend that a suspect be arrested' are not entitled to immunity." *Id.* at 527 (quoting *Buckley*, 509 U.S. at 273.) And the court concluded that because there was a question of fact regarding whether, at the time of IW's interview, he was a suspect in his sister's alleged abuse, there was also a question of fact with respect to whether the prosecutors' interview of IW could "fall within [the prosecutor's] roles as investigators." *Id.* The court therefore held that there was a disputed question of fact with respect to whether prosecutors' "actions could be characterized as investigative or prosecutorial." *Id.* at 527-28.

Likewise here, Watkins plausibly alleges that Healy's actions were undertaken to create "probable cause to recommend that [Watkins] be arrested." *Id.* at 527. Therefore, at this point, Healy is not entitled to absolute immunity with respect to Watkins' Fourth Amendment claim for damages. *See also Adams*, 656 F.3d at 402 (citing *Buckley,* noting that "[i]nvestigative acts outside the scope of absolute immunity include … conspiring to fabricate evidence during the time before convening a grand jury," and explaining that acts "such as the preliminary gathering of evidence that may ripen into a prosecution[] are too attenuated to the judicial process to afford absolute protection"); *Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995) (noting that when a "prosecutor manufactures evidence for

the purpose of obtaining probable cause to arrest a suspect," the prosecutor is not entitled to absolute immunity for that alleged fabrication).[9]

Healy cites several cases for the proposition that his actions as alleged by Watkins fell "squarely within the role of a prosecutor" and an advocate and are therefore protected by absolute immunity. (Mot. to Dismiss, ECF #34 at Pg. ID 7769.) But the cases cited by Healy are distinguishable. Healy first directs the Court to the Sixth Circuit's decision in *Beckett v. Ford*, 384 F. App'x 435, 449-50 (6th Cir. 2010). In *Beckett*, a state-court prosecutor allegedly coerced an individual to falsely implicate the plaintiff in a murder investigation, and the Sixth Circuit held that the prosecutor was entitled to absolute immunity. The Sixth Circuit stressed that the alleged misconduct had a close connection to the trial process. The prosecutor allegedly "pressured, threatened, and enticed witnesses to lie at [the plaintiff's] trial, presented false testimony at that trial, failed to disclose a deal he and [a police officer] had made with [a witness], and conspired with [a police officer] to frame [the plaintiff] for [] murder." *Beckett*, 384 F. App'x at 451. The court concluded that "even if [the prosecutor] threatened, coerced, or enticed [the witness] into presenting

---

[9] *See also Williams v. City of Chicago*, 315 F.Supp.3d 1060, 1076-77 (N.D. Ill. 2018) (denying prosecutor's motion to dismiss based on absolute immunity where plaintiff alleged that the prosecutor "was directly involved in conducting a pre-charging coercive overnight interview of [a witness]," "author[ed] a statement riddled with falsehoods for [the witness] to sign," and then "relied on [that false] statement to procure charges against [the plaintiff]" because these allegations involved "investigative misconduct" that took place before criminal charges were filed).

false testimony, [the prosecutor] did so as part of his effort to prosecute [the plaintiff] for [the] murder. In other words, despite [the plaintiff's] assertion that any fabrication of evidence 'occurred during the investigatory phase of [the plaintiff's] ordeal,' and despite [the plaintiff's] assertion that [the prosecutor] was engaged in investigation … [the prosecutor] was acting neither as an investigator nor an administrator when he reviewed with [the witness] what [the witness] would say on the stand." *Id.* (internal citation omitted). Healy's alleged fabrication of Herndon's statement before probable cause existed and before any charging decision had been made lacks the close connection that existed in *Beckett* between the prosecutor's misconduct and the presentation of the state's case at trial.

Healy also relies on *Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003). In *Spurlock*, the Sixth Circuit held that a prosecutor who allegedly conspired with police officers to offer false testimony at a defendant's criminal trial was entitled to absolute immunity. The Sixth Circuit explained that "[p]rosecutorial decisions regarding witness testimony, including what witnesses to use at trial, and what questions to ask them, are activities intimately associated with the judicial phase of a criminal trial and, therefore, are protected by absolute prosecutorial immunity." *Id.* at 798. The court therefore held that the prosecutor's decision "to have [two witnesses] testify falsely at [the defendant's] second criminal trial, even if done knowingly, [was] protected by absolute immunity." *Id.* But *Spurlock* did not hold

that the prosecutor was absolutely immune for conduct that took place before

probable cause to arrest existed. On the contrary, the court in *Spurlock* explained

that "where the role as advocate has not yet begun, namely prior to indictment …

absolute immunity does not apply." *Id.* at 799.[10]

Here, for all of the reasons stated above, Watkins plausibly alleges that

Healy's fabrication of evidence took place "prior to indictment" and before Healy's

"role as advocate [had even] begun." *Id.* Therefore, at this stage, Healy is not entitled

---

[10] Healy also relies upon the Sixth Circuit's decision in *Joseph v. Patterson*, 795 F.2d 551 (6th Cir. 1986) for the proposition that "the harm flowing from a prosecutor's decision to seek an arrest warrant after participating with police to coerce a witness into offering false testimony is protected by absolute immunity." (Mot. to Dismiss, ECF #34 at Pg. ID 7769.) But *Joseph* is inapposite for several reasons. First, the Sixth Circuit emphasized in *Joseph* that "the prosecutors knowingly obtained issuance of criminal complaints and arrest warrants … based on false, coerced statements elicited from [a witness]." *Joseph*, 795 F.2d at 555. But here, Watkins specifically alleges that "Healy was *not involved* in the decision to seek a warrant for [Watkins'] arrest." (Am. Compl. at ¶40, ECF #30 at Pg. ID 7497-98; emphasis added). Thus, *Joseph* involved a closer link between the prosecutors' fabrication of evidence and the judicial process than is allegedly present here. Second, while the court in *Joseph* did grant prosecutors absolute immunity related to their roles obtaining the arrest warrants, the court *declined* to grant prosecutors absolute immunity with respect to actions they took *before* those warrants were requested. More specifically, the court declined to grant the prosecutors absolute immunity related to their conduct coercing a witness "into making false statements which support *a later* criminal complaint." *Joseph*, 795 F.2d at 555 (emphasis added). The court recognized that certain, pre-arrest activities by prosecutors were "investigatory activit[ies]," and that such activit[ies] were not entitled to absolute immunity. *Id.* Finally, in any event, *Joseph* was decided before *Buckley*, and it was expressly abrogated by the Supreme Court's decision in *Kalina v. Fletcher*, 522 U.S. 118, 123 (1997). For all of these reasons, the Court concludes that *Joseph* does not entitle Healy to absolute immunity.

to absolute immunity from Watkins' Fourth Amendment claims seeking to recover damages for his pre-conviction detention.

**3**

Healy counters that even if he is not entitled to absolute immunity under the law as it stands today (*i.e.*, under *Buckley* and its progeny), he did enjoy absolute immunity with respect to all of Watkins' Fourth Amendment claims in 1975 at the time of his alleged wrongful acts. (*See* Mot. to Dismiss, ECF #34 at Pg. ID 7764-67.)  Healy insists that in 1975, the law of absolute immunity did not draw the distinction between investigative and prosecutorial acts described in *Buckley*, and that at that time, prosecutors were absolutely immune for *all* of their conduct, no matter when in the criminal process that conduct occurred.  And Healy says *Buckley* cannot and did not retroactively strip him of the absolute immunity that he enjoyed at the time of his alleged actions in this case.  The Court disagrees with Healy's assessment of the law of absolute immunity in 1975.

Shortly after Watkins' conviction, the United States Supreme Court decided *Imbler*, *supra*, a case involving prosecutorial immunity.  In *Imbler*, the Supreme Court noted that for many years, several lower courts had declined to recognize a blanket immunity for prosecutors. *See Imbler*, 424 U.S. at 430.  Those courts "focus[ed] upon the functional nature of the activities [of the prosecutor] rather than [the prosecutor's] status." *Id.*  For instance, in *Robichaud v. Ronon*, 351 F.2d 533,

537 (9th Cir. 1965), one of the cases cited by the Supreme Court in *Imbler*, the Ninth Circuit held that when analyzing a prosecutor's claim for absolute immunity, "[t]he trial court must determine the nature of the acts alleged to have been wrongfully committed, for the [prosecutors] may have abandoned their 'quasi-judicial' role. If they, so doing, committed acts, or authoritatively directed the commission of acts, which ordinarily are related to police activity as opposed to judicial activity, then the cloak of immunity should not protect them." *Id.* The standard applied by the Ninth Circuit in *Robichaud* is analogous to the standard later adopted by the Supreme Court in *Buckley*.

Prior to Healy's alleged conduct here, the Sixth Circuit and this Court followed *Robichaud*. For example, in *Hillard v. Williams*, 465 F.2d 1212 (6th Cir. 1972) ("*Hilliard I*"), the Sixth Circuit relied in part on *Robichaud* and held that "the immunity of a prosecuting attorney from civil liability is not absolute." *Id.* at 1217. The court held that "acts which were outside [a prosecutor's] quasi-judicial capacity and beyond the scope of duties constituting an integral part of the judicial process," were not entitled to absolute immunity. *Id.* at 1218. And in *Link v. Greyhound*, 288 F.Supp. 898, 900 (E.D. Mich. 1968), this court quoted *Robichaud* for the proposition that "the key to the immunity previously held to be protective to the prosecuting attorney is that the acts, alleged to have been wrongful, were

committed by the officer in the performance of an integral part of the judicial process."

As these cases demonstrate, at the time of Healy's alleged wrongful acts in 1975, the Sixth Circuit did not recognize blanket immunity for prosecutors. Instead, like the Supreme Court in *Buckley,* the Sixth Circuit confined a prosecutor's absolute immunity to activities closely associated with the judicial process.[11] And for all of the reasons explained above, the Court concludes that Healy's alleged conduct here did not occur as an integral part of the judicial process. Thus, Healy has not

---

[11] In support of Healy's argument that the Court cannot strip him of the blanket absolute immunity that he claims to have enjoyed at the time of his alleged misconduct, Healy cites the Sixth Circuit's decision later decision in the *Hilliard* case: *Hilliard v. Williams*, 540 F.2d 220 (6th Cir. 1976) ("*Hilliard II*"). In *Hilliard II*, the Sixth Circuit reconsidered its ruling in *Hillard I* in light of the Supreme Court's decision in *Imbler*. The Sixth Circuit held that based upon *Imbler*, the prosecutor was entitled to absolute immunity. *See Hilliard*, 540 F.2d at 221-22. Healy interprets *Hilliard II* as rejecting the functional approach to prosecutorial immunity and holding that prosecutors have blanket immunity. But even if Healy reads *Hilliard II* correctly, it does not help him here. *Hilliard II* was not decided until *after* Healy's alleged misconduct. And as explained above, *at the time of Healy's alleged misconduct*, Healy did *not* enjoy blanket immunity; instead, his entitlement to absolute immunity was tied to whether he was performing a function that was closely related to the judicial process. Thus, evaluating Healy's absolute immunity claim under the functional approach would not retroactively strip Healy of immunity that he enjoyed at the time of his alleged misconduct. Moreover, if, as Healy claims, *Hilliard II* rejected the functional approach, the Supreme Court restored that approach in *Buckley* in 1993. In sum, then, at the two relevant points in this case – the time of Healy's alleged misconduct and the time that Watkins filed this action – Healy did not enjoy blanket absolute immunity.

persuaded the Court that he enjoyed absolute immunity at the time of his alleged actions in this case.

## D

Healy next argues that Watkins' Fourth Amendment "fabrication of evidence" claim fails because Watkins failed to allege that Healy "fabricated" Herndon's statement. (Mot. to Dismiss, ECF #34 at Pg. ID 7771-72.) Healy contends that a prosecutor "fabricates" evidence only where he creates evidence against a suspect knowing that the evidence is *false*. Healy insists that Watkins does not allege such fabrication here. According to Healy, Watkins alleges only that Healy (1) was confronted with two different versions of events offered by Herndon – one implicating Watkins and one not doing so – (2) concluded that the version implicating Watkins was true, and (3) compelled Herndon to make a statement incorporating that version. Healy says that, at most, such conduct amounts to "coercion" of a statement and that coercion, standing alone, does not amount to "fabrication." *See*, *e.g.*, *Wrice v. Burge*, 187 F.Supp.3d 939, 952 (N.D. Ill. 2015) (holding that a plaintiff failed to state a cognizable fabrication-of-evidence claim where he alleged only that police officers had "tortured him … into making statements, not that the officers fabricated those statements out of whole cloth knowing they were false"); *Anderson v. City of Rockford*, 2018 WL 2332066, at *15 (N.D. Ill. May 23, 2018) (holding that a plaintiff "need[ed] to identify evidence

showing that defendants knew that a witness' statement later presented as testimony was false, not merely evidence that the statement and resulting testimony were coerced").

But Watkins plausibly alleges that Healy did fabricate a *false* statement by Herndon. Watkins claims that Healy forced Herndon to implicate Watkins after Herndon had (1) recanted and labeled as "not true" his earlier statements accusing Watkins of killing Ingram, (2) told Healy "that Watkins had nothing to do with the murder," and (3) said that "Herndon and Vazana," *not* Watkins, killed Ingram. (Am. Compl. at ¶¶23, 26, ECF #30 at Pg. ID 7493.) These are plausible allegations that Healy knew (or should have known) that Herndon's statement implicating Watkins was *false*. Because Watkins plausibly alleges that Healy coerced Herndon into making a statement Healy knew to be untrue, Watkins has sufficiently alleged that Healy fabricated evidence.[12]

## V

Healy next argues that he is entitled to the dismissal of Watkins' Due Process claims (Counts II and IX). The Court will address each of Healy's Due Process arguments in turn.

---

[12] Healy has not cited any case in which a court has found a lack of "fabrication" where an officer or prosecutor compelled a witness to make a statement that the witness has indicated is not true.

**A**

Healy first argues that he is entitled to dismissal of Watkins' Due Process claims on the basis of absolute immunity. (*See* Mot. to Dismiss, ECF #34 at Pg. ID 7774-75.) According to Healy, "prosecutors were and are absolutely immune from claims that they elicited known false or perjured testimony at trial that was used by a jury to convict." (*Id.* at Pg. ID 7774.) Healy claims that "[t]his absolute immunity bars the Due Process claim here" because the "harm could only have resulted from [] Healy's alleged use and elicitation of Herndon's false testimony to convict [Watkins]." (*Id.* at Pg. ID 7775.) The Court disagrees.

Watkins' Due Process claim does not necessarily rest upon Healy's "use and elicitation of Herndon's false testimony" at trial. Watkins alleges in his Due Process claims that he was damaged by Healy's pre-trial fabrication of Herndon's false statement. Watkins plausibly contends that without that statement, he never would have been subjected to a trial or wrongfully detained. (*See* Am. Compl. at ¶32, ECF #30 at Pg. ID 7495.) This type of fabrication-of-evidence claim does not hinge upon the use of fabricated evidence at trial, and thus Healy's absolute immunity for trial-related conduct does not shield him from such a claim.

The Sixth Circuit's recent decision in *Jackson v. City of Cleveland*, 925 F.3d 793 (2019), confirms that a Due Process fabrication-of-evidence claim does not necessarily depend upon the introduction or use of the fabricated evidence at trial.

In *Jackson*, the three civil plaintiffs were convicted of murder in an earlier state-court criminal trial. *See id.* at 802. "Their convictions were based largely on the purportedly eyewitness testimony of Edward Vernon, who then was thirteen years old." *Id.* During the investigation into the murder, police officers brought Vernon to the police station so that he could identify two of the plaintiffs during a line-up. When the officers asked Vernon if he "recognize[d]" anyone in the line-up, "Vernon replied that he [did] not." *Id.* at 804. Two detectives "then brought Vernon into a room, whereupon [one officer] accused Vernon of lying, threatened to send his parents to jail for perjury, banged on a table, and used racial pejoratives to describe Vernon." *Id.* Officers thereafter "gave Vernon a piece of paper, explained to him that it said that he had failed to identify [the arrested suspects] in the line-up because he had been scared of their retaliating, and told Vernon to sign it, which he did." *Id.*

At the plaintiffs' criminal trials, Vernon's signed statement explaining why he failed to identify the defendants in the line-up was *not* admitted into evidence by the prosecution.[13] Instead, Vernon offered testimony consistent with that statement. *See id.* The plaintiffs were then convicted, largely based on Vernon's live testimony.

_____

[13] The three plaintiffs in *Jackson* were tried separately. Vernon's signed statement was introduced by the defense for impeachment purposes at one of the trials and not introduced at all for any purpose at the other two trials. *See Jackson*, 925 F.3d at 816. The Sixth Circuit noted that it was "fair to conclude … [that] Vernon's live testimony, not the statement, led to the convictions at all three trials." *Id.* (internal punctuation omitted).

*See id.* at 805.  Forty years later, Vernon "formally recanted his testimony," and the charges against the plaintiffs were dismissed. *Id.*

Following the plaintiffs' release from custody, plaintiffs filed suit "based on alleged violations of their constitutional rights." *Id.* at 802.  The plaintiffs included in their complaint a claim that the officers violated the Due Process Clause by fabricating Vernon's statement explaining his failure to identify the plaintiffs in the line-up. *See id.* at 813, 815-817.  One of the defendant officers thereafter moved for summary judgment on the ground that "the fabricated statement [did not] affect[] the decision of the jury" because it was not admitted at the plaintiffs' trials. *Id.* at 816.  The district court granted the officer's motion `and concluded that the witness's "live testimony, not the statement, led to the convictions." *Id.* (internal quotation marks omitted).

The Sixth Circuit reversed.  It held that "the relevant question [was] not whether the fabricated evidence was *shown* to the jury; it [was] whether the statement *affected* the decision of the jury." *Id.* (emphasis in original).  The court then held that "fabricated evidence that is used as the basis for a criminal charge can form the basis for a § 1983 claim because, absent that evidence, there would have been no jury." *Id.* (internal punctuation omitted).  The court further noted that "a jury [in the plaintiffs' Section 1983 case] could [also have found] that the falsified statement caused the criminal verdicts because the statement coerced Vernon [the

witness who allegedly provided the false statement] to testify in conformance with [the statement]." *Id. Jackson* therefore demonstrates that a claim for fabrication of evidence in violation of the Due Process Clause may rest upon alleged misconduct that occurs long before, and is not part of, the trial process.

As in *Jackson*, Watkins may pursue a Due Process fabrication-of-evidence claim based upon alleged misconduct that Healy took separate and apart from his (Healy's) participation in Watkins' criminal trial. Indeed, Watkins' fabrication claim is like the one asserted by the plaintiffs in *Jackson*. Watkins plausibly alleges that before the judicial process began, Healy fabricated evidence – Herndon's statement – that led to the filing of criminal charges and to the impaneling of the jury for trial. (Am. Compl. at ¶32, ECF #30 at Pg. ID 7495.) And because Watkins' Due Process fabrication-of-evidence claim is based upon alleged misconduct occurring before, and apart from, the commencement of the judicial process, Healy is not absolutely immune from that claim.

Finally, the fact that Healy may enjoy absolute immunity for introducing allegedly-false testimony by Herndon at trial does not somehow retroactively immunize Healy's fabrication of Herndon's statement long before trial and prior to the commencement of the judicial process. *See*, *e.g.*, *Spurlock v. Satterfield*, 167 F.3d 995, 1000 (6th Cir. 1999) ("The simple fact that acts may ultimately lead to

witness testimony does not serve to cloak these actions with absolute testimonial immunity").

For all of these reasons, Healy has not persuaded the Court that he is entitled to absolute immunity with respect to Watkins' Due Process claims.[14]

## B

Healy next argues that Watkins' Due Process claims are barred by the statute of limitations. (*See* Mot. to Dismiss, ECF #34 at Pg. ID 7775-77.) This argument closely tracks Healy's Fourth Amendment statute-of-limitations argument discussed in detail above. Healy maintains that the time of Watkins' conviction in 1976, a malicious prosecution claim brought under the Due Process Clause did not require a plaintiff to show that the underlying criminal proceedings had terminated in the plaintiff's favor. Healy insists that it was not until the Supreme Court's decisions in *Heck*, *supra*, and *McDonough v. Smith*, 139 S.Ct. 2149 (2019), that it became clear that a convicted criminal defendant had to obtain relief from his conviction before he could pursue a Due Process claim seeking to recover for post-conviction detention. Healy therefore contends that Watkins could have brought his Due

---

[14] The section of Healy's motion to dismiss in which he seeks absolute immunity for Watkins' Due Process claims is titled "Absolute and/or Qualified Immunity Bars the Due Process Claim." (Mot. to Dismiss, ECF #34 at Pg. ID 7774.) But Healy has not made any argument that he is entitled to *qualified* immunity. Instead, the argument that he presents in his motion is limited to solely *absolute* immunity. To the extent that Healy contends that he may be entitled to qualified immunity, he may raise that defense on summary judgment.

Process claims at the time of his conviction and that the claims are time-barred because he did not do so.

For all of the reasons explained above with respect to Watkins' Fourth Amendment claims, the Court disagrees that Watkins' Due Process claims are barred by the statute of limitations. Simply put, Healy has not yet persuaded the Court that in 1976 Watkins could have brought a Due Process-based claim for damages without showing that his criminal proceedings terminated in his favor. Healy is therefore not entitled to dismissal of Watkins' Due Process claims on the basis that those claims expired in 1979 (three years after Watkins' conviction).

## C

Finally, Healy argues that Watkins' Due Process claim fails because Watkins has not alleged that Healy actually "fabricated" evidence. This argument tracks Healy's attack on Watkins' claim that Healy fabricated evidence in violation of the Fourth Amendment. For the same reasons that the Court rejected this attack Watkins' Fourth Amendment fabrication-of-evidence claim (*see* above at Section IV(D)), the Court declines to dismiss Watkins' Due Process fabrication-of-evidence claim on the ground that Watkins' has failed to allege a "fabrication" by Healy.

## VI

Finally, Healy moves to dismiss Watkins' state common-law malicious prosecution claim (Count XV) on two grounds.  First, Healy argues that he is entitled to absolute immunity under Michigan law. (*See* Mot. to Dismiss, ECF #34 at Pg. ID 7777-80.)  Second, Healy contends that Watkins has not sufficiently pleaded that his underlying criminal proceedings terminated in his favor. (*See id.* at Pg. ID 7780-82.) The Court will examine each of these arguments separately.

## A

Healy first argues that "[a]t the time of the 1975-76 investigation and trial, and today, Michigan common law provides absolute immunity for prosecutors accused of manipulating/coercing false testimony before charges were filed, using and eliciting false evidence at a preliminary examination, and using and eliciting false evidence at a criminal trial." (*Id.* at Pg. ID 7777.)  Healy further insists that "[it] cannot be said that Michigan common law in the 1970s, or today, has or would have tracked later Supreme Court holdings regarding the scope of § 1983 absolute immunity" (*i.e.*, the approach endorsed in *Buckley* that rejected blanket immunity for prosecutors). (*Id.* at Pg. ID 7778.)  The Court disagrees.

Michigan law with respect to prosecutorial immunity generally follows the federal standard discussed in detail above. *See*, *e.g.*, *Cheolas v. City of Harper*, 2009 WL 388548, at *9 (E.D. Mich. Feb. 13, 2009) ("Michigan courts have recognized a

common-law prosecutorial immunity that closely tracks the absolute § 1983 immunity conferred by the Supreme Court in *Imbler*").  More specifically, Michigan law incorporates the distinction in federal law between investigatory actions (which are not entitled to absolute immunity) and actions intimately associated with the judicial process (which are). *See Mathews v. Blue Cross and Blue Shield of Michigan*, 572 N.W.2d 603 (Mich. 1998).  In *Matthews*, the Michigan Supreme Court favorably cited the United States Supreme Court's decision in *Kalina v. Fletcher*, 118 S.Ct. 502 (1997), for the proposition that "a prosecutor is fully protected by 'absolute immunity ... *when performing traditional functions' of an advocate*." *Matthews*, 572 N.W.2d at 611 n.16 (quoting *Kalina*, 118 S.Ct. at 507-08; emphasis added).  This indicates to the Court that Michigan law generally tracks the functional approach to prosecutorial immunity adopted by the Supreme Court in *Buckley* and that federal courts in this circuit applied for many years before *Buckley*. And for all of the reasons that Healy is not entitled absolute immunity under federal law at this stage, Healy is not now entitled to absolute immunity under Michigan law.

Healy counters that the Michigan Supreme Court's decision in *Belt v. Ritter*, 189 N.W.2d 221 (Mich. 1971), demonstrates that Michigan prosecutors enjoyed blanket absolute immunity in 1975 and 1976.  The Court does not share Healy's reading of *Belt*.  In *Belt*, the Michigan Supreme Court explains that "[t]e judiciary

has long been granted immunity from suits for malicious prosecution, and this immunity has gradually been extended to cover prosecuting attorneys, on the theory that they act in a quasi-judicial capacity." *Id.* at 222. But *Belt* does not define "quasi-judicial capacity," and it says nothing about what conduct is undertaken in that capacity and thus may be afforded absolute immunity. Nor does *Belt* hold that prosecutors have absolute immunity for actions outside the traditional functions of an advocate. In sum, *Belt* does not establish that prosecutors have absolute immunity for the conduct in which Healy allegedly engaged. And Healy has not cited a single Michigan case in which any Michigan court has ever held that a prosecutor is absolutely immune for conduct similar to Healy's alleged fabrication of Herndon's statement here.

## B

Healy next argues that under Michigan law, the dismissal of the criminal proceedings against Watkins did not amount to a termination of the proceedings in Watkins' favor. This argument closely tracks the no-favorable-termination argument that Healy presented in support of his request that the Court dismiss Watkins' federal constitutional claims. Healy insists that a plaintiff pursuing a common-law malicious prosecution claim under Michigan law must show that the underlying criminal proceedings terminated in the plaintiff's favor, and Healy contends that "proceedings are terminated in favor of the accused [under Michigan

law] only when their final disposition is such as to indicate the innocence of the accused." (Mot. to Dismiss, ECF #34 at Pg. ID 7780, quoting Restatement (Second) Torts § 660 cmt. a; internal punctuation omitted).  The Court disagrees.

In *Wolfe v. Perry*, 412 F.3d 707 (6th Cir. 2005), the Sixth Circuit explained that "Michigan courts have defined 'termination of the criminal proceedings in favor of the accused' to include 'the formal abandonment of the proceedings by the public prosecutor.  Specifically, the 'dismissal of criminal charges at the insistence of the prosecutor … implies a lack of reasonable ground for prosecution and is a favorable termination of the proceeding for purposes of a malicious prosecution action.'" *Wolfe*, 412 F.3d at 715 (quoting *Cox v. Williams*, 592 N.W.2d 173, 174-75 (Mich. App. 1999)).

As explained in detail above, Watkins plausibly alleges that a "formal abandonment of the proceedings by the public prosecutor" is precisely what happened here.  Thus, for the same reasons that Healy's "factual innocence" argument failed under federal law, it also fails under Michigan law.  Indeed, Healy has not cited any Michigan cases in which any court has held that "innocence" in this context under Michigan law is strictly limited to factual innocence.

Finally, Healy argues that "where a termination results from a compromise or settlement …. There is no favorable termination that will serve as a basis for a cause of action for malicious prosecution." (Mot. to Dismiss, ECF #34 at Pg. ID 7781,

quoting *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 363-64 (Mich. App. 2003).) And Healy insists that the dismissal of the criminal charge here was the result of a "compromise or settlement" between Watkins and the Wayne County Prosecutor's Office. But, for all of the reasons described above, at this stage of the proceedings, the Court cannot conclude as a matter of law that the dismissal was the result of a "compromise or settlement." Healy may explore the circumstances that led to the dismissal of the criminal charge against Watkins during discovery and may, if appropriate, raise this argument on a full record during the summary judgment phase of this action.

## VII

For the reasons explained above, Healy's motion to dismiss (ECF #34) is **DENIED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated: August 12, 2019                      UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 12, 2019, by electronic means and/or ordinary mail.

s/A. Chubb for Holly A. Monda
Case Manager
(810) 341-9764