UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEDURA WATKINS,

      Plaintiff,                                Case No. 17-cv-13940
                                                Hon. Matthew F. Leitman

v.

ROBERT H. HEALY, *et al.*,

      Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANT ROBERT H. HEALY'S MOTION FOR RECONSIDERATION (ECF NO. 49)

In 1976, Plaintiff Ledura Watkins was convicted of first-degree murder in state court and sentenced to life in prison without the possibility of parole. In 2017, the state trial court vacated Watkins' conviction. Later that year, Watkins filed this civil-rights action against Defendant Robert H. Healy, a former state-court prosecutor, and others. Watkins alleges that Healy violated his (Watkins') rights under the Fourth and Fourteenth Amendments by fabricating evidence against him and maliciously prosecuting him. Healy previously moved to dismiss Watkins' claims on the grounds that they are barred by the statute of limitations and by prosecutorial immunity. (*See* Mot. to Dismiss, ECF No. 34.) The Court denied that motion. (*See* Op. and Order, ECF No. 47.) Healy now moves the Court to reconsider its rulings on his limitations and immunity defenses. (*See* Mot. for Reconsid., ECF

No. 49.)  The motion raises several serious arguments in a thoughtful manner, and the Court has carefully considered Healy's contentions.  However, the Court remains convinced that its earlier ruling was correct.  Accordingly, for the reasons explained in detail below, Healy's motion for reconsideration is **DENIED**.

# I

The Court's earlier Opinion and Order set forth in great detail the background facts, the allegations in Watkins' Amended Complaint, and the Court's analysis of Healy's limitations and immunity defenses.  The Court will not repeat those matters here.  For the purposes of this Opinion and Order, the Court assumes that the reader will have already carefully reviewed the Court's prior ruling.  For ease of reference, though, the Court will repeat the claims Watkins brings against Healy.  Those claims are:

- Fabrication of evidence in violation of the Fourth Amendment (Count I);
- Fabrication of Evidence in violation of the Due Process Clause of the Fourteenth Amendment (Count II);
- Malicious Prosecution in violation of the Fourth Amendment (Count III);
- Civil Conspiracy in violation of the Fourth Amendment (Count VIII);
- Civil Conspiracy in violation of the Fourteenth Amendment (Count IX); and
- Common law Malicious Prosecution (Count XV).

## II

Healy first argues that the Court should have dismissed Watkins' constitutional claims as barred by the applicable three-year statute of limitations. The Court held that the claims were not time-barred because (1) they did not accrue until the state trial court vacated Watkins' conviction in 2017 and (2) Watkins filed this action within three years of that event. Healy now counters that "under the legal precedent from the relevant era" – which Healy defines as the caselaw existing in 1975 and 1976 – Watkins' constitutional claims accrued decades before Watkins' conviction was vacated. (*See* Mot. for Reconsid., ECF No. 49, PageID.10088-10095.) Thus, Healy insists that the three-year statute of limitations expired long before Watkins filed this action. The Court disagrees.

There are two problems with Healy's argument. First, he misidentifies the "relevant era." The accrual of Watkins' constitutional claims must be assessed under Supreme Court and Sixth Circuit precedent from the *current* era because those decisions apply retroactively to the events that impacted Watkins in 1975-1976. And under current law, it is clear that Watkins' constitutional claims against Healy did not accrue until the state trial court vacated Watkins' conviction in 2017. Second (and in any event), Healy erroneously characterizes the law of accrual during what he defines as the "relevant era." Contrary to Healy's contention, even under the law

as it then existed, Watkins' constitutional claims did not accrue until his conviction was vacated.

## A

Two Supreme Court decisions – *Heck v. Humphrey*, 512 U.S. 477 (1994) and *McDonough v. Smith*, 139 S.Ct. 2149 (2019) – compel the conclusion that Watkins' Due Process fabrication of evidence claim did not accrue until his conviction was vacated and that that claim is thus not time-barred. Below, the Court explains how *Heck* and *McDonough* require that conclusion and why they apply to Watkins' Due Process fabrication of evidence claim even though they were decided long after the events underlying that claim.

### 1

#### a

In *Heck*, the Supreme Court adopted a delayed-accrual rule for certain types of claims under 42 U.S.C. § 1983. Under that rule, "a cause of action under § 1983 that would imply the invalidity of a conviction does not accrue until the conviction is reversed or expunged, and therefore the statute of limitations does not begin to run until such an event occurs, if ever." *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014) (describing holding in *Heck*). The delayed-accrual rule from *Heck* applies to Watkins' Due Process fabrication of evidence claim because that claim implies

the invalidity of his conviction.[1] (*See, e.g.*, Am. Compl. at ¶123, ECF No .30, PageID.7517 – alleging that fabrication of evidence led to, and invalidated, Watkins' conviction.)  And under that rule, the claim did not accrue until the state trial court vacated Watkins' conviction in 2017.[2]

**b**

Under the Supreme Court's decision in *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993), this Court must apply *Heck* to Watkins' Due Process fabrication of evidence claim even though *Heck* was decided nearly twenty years after both Healy's alleged misconduct and Watkins' conviction.  In *Harper*, the Supreme Court held that when it "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review *and as to all events, regardless of whether such events predate or postdate our announcement of the rule*." 509 U.S. at 97 (emphasis added).

---

[1] *See Rogers v. Detroit Police Department*, 595 F.Supp.2d 757, 766-67 (E.D. Mich. 2009) (applying *Heck's* delayed-accrual rule to fabrication of evidence claim that implied invalidity of conviction).

[2] As the Seventh Circuit has explained, *Heck's* delayed-accrual rule applies both offensively and defensively. *See Johnson v. Winstead*, 900 F.3d 428, 434 (7th Cir. 2018).  Defendants apply the rule offensively to seek dismissal of claims by plaintiffs who have not yet had their underlying conviction reversed or vacated.  Plaintiffs, in contrast, invoke the rule when defending against motions to dismiss based upon the statute of limitations.  The decision in *Rogers, supra*, involved an offensive use of the rule.

*Heck* satisfies *Harper's* two requirements for retroactive application. First, *Heck's* delayed-accrual rule is a rule of federal law. *See Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996) (explaining that "federal law determines the accrual of civil rights claims" under § 1983). Second, the Supreme Court in *Heck* applied the rule that it adopted to the parties before it. *See Heck*, 512 U.S. at 490 ("Applying these principles to the present action … we find that dismissal of the action was correct.") Because *Heck* satisfies the *Harper* test for retroactive application, *Heck* applies to "all events," including those that "predate" its "announcement." *Harper*, 509 U.S. at 97. Thus, *Heck's* delayed-accrual rule applies to the events underlying Watkins' Due Process fabrication of evidence claim even though those events occurred long before the Supreme Court decided *Heck*.

Indeed, the Sixth Circuit has applied *Heck's* delayed-accrual rule to events that transpired many years before the Supreme Court decided *Heck. See Harrison v. State of Michigan*, 722 F.3d 768 (6th Cir. 2013). In *Harrison*, the plaintiff was convicted of two crimes and sentenced to consecutive terms of imprisonment in 1986. The plaintiff was released in 1990 after he had served the statutory maximum term for the offenses of conviction. Following plaintiff's release from prison, he filed a collateral attack on his sentences in state court. After lengthy proceedings, a state appellate court held in 2008 that the plaintiff had been improperly sentenced. In 2010, the plaintiff brought § 1983 claims alleging that a portion of his confinement

had been unlawful.  The district court held that the claims were time-barred.  But the

Sixth Circuit held that the claims were subject to *Heck's* delayed-accrual rule and

thus were not time-barred even though the alleged constitutional violation took place

many years *before Heck*:

> In this case, Harrison's 1986 sentence has, in fact, been "declared invalid by a state tribunal authorized to make such determination." That favorable termination occurred when the Michigan Court of Appeals reversed Harrison's sentence in 2008, holding that "[he] was improperly sentenced to consecutive terms for his convictions," and remanded the case for entry of a corrected judgment. *People v. Harrison,* 2008 WL 4276544, at *1. Harrison then filed the instant § 1983 suit in 2010, within Michigan's three-year statute of limitations. As a result, this federal action is not untimely.

> [….]

> [T]he district court observed that Harrison knew of his "false imprisonment" while incarcerated on the 1986 conviction and, therefore, that the statute of limitations in his case began to run in 1990, when he was released from imprisonment.  But that analysis by the district court mixes apples with oranges and cannot be correct, because we know from *Heck* that a damages claim for a wrongful criminal conviction or sentence does not accrue until the conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 487, 114 S.Ct. 2364. Thus, if Harrison had brought a § 1983 suit in 1990 when released from prison on the 1986 conviction, it would *necessarily* have been dismissed for failure to state a claim, because Harrison's 1986 conviction had not yet been reversed or his sentence corrected. That did not

happen until the Michigan Court of Appeals ordered the state trial court to take such action in 2008. Before that date, any claim that Harrison might have alleged asserting the invalidity of his 1986 conviction, regardless of the relief sought, would have been — in the words of the *Heck* Court — "not cognizable under § 1983" for lack of a favorable termination. *Id.*

*Harrison,* 722 F.3d at 772-73 (emphasis in original). Many other federal courts have likewise applied *Heck's* delayed-accrual rule to events that occurred long before *Heck* was decided and to cases that were not pending when *Heck* was decided. *See, e.g.*, *Cannon v. Burge,* 2006 WL 273544, at **8-9 (N.D. Ill. Feb. 2, 2006) (holding under *Heck* that several § 1983 claims based upon alleged police misconduct in 1983 did not accrue until the charges against the plaintiff were finally dismissed in 2004); *Brinson v. City of Philadelphia*, 2012 WL 975073, at *2 (E.D. Pa. Mar. 21, 2012) (explaining that under *Heck*, plaintiff's § 1983 claim based upon alleged prosecutorial misconduct in 1986 accrued when plaintiff obtained certain relief from the conviction in 2007); *Dick v. Carpenter*, 2003 WL 1563732, at ** 1-2 (N.D. Ill. Mar. 17, 2003) (holding under *Heck* that § 1983 claims based upon alleged police misconduct underlying a conviction in 1983 accrued in 2001 when the plaintiff's conviction was vacated); *Hall v. City of Los Angeles*, 2013 WL 12349587, at *4 (C.D. Cal. Apr. 1, 2013) (holding under *Heck* that § 1983 conviction based upon alleged law enforcement misconduct in the mid-1980's did not accrue

until the plaintiff's conviction was vacated nearly twenty years later).[3]  The Court is persuaded that *Harper* requires retroactive application of *Heck* to the events underlying Watkins' Due Process fabrication of evidence claim.[4]

c

Healy counters with a narrow reading of *Harper*.  He contends that *Harper* only requires retroactive application of a Supreme Court decision to cases that were pending on direct review when the decision was issued. (*See* Healy Supp. Br., ECF

---

[3] In *Walden v. City of Chicago,* 391 F.Supp.2d 660, 669-70 (N.D. Ill. 2005), the United States District Court for the Northern District of Illinois "appl[ied] *Heck* in full retroactive fashion" – *i.e.*, to events that occurred long before *Heck* was decided and in a case that was not pending when *Heck* was decided.  That court declined to "speak definitively" on the issue because the parties had not fully briefed the issue, *id.* at 670, but its initial treatment of the *Heck* retroactivity issue aligns with this Court's analysis and conclusion.

[4] There may be another basis for applying *Heck* to the events at issue in this action. On one view, *Heck* is a case of statutory interpretation because it required the Supreme Court to harmonize certain claims under § 1983 with the operation of the federal habeas statutes.  *See Heck*, 512 U.S. at 480-81; *see also Erlin v. United States*, 364 F.3d 1127, 1132 (9th Cir. 2004) (explaining that *Heck* "require[d] interpretation of federal statutes."); *Anderson v. Nebraska*, 2018 WL 4354952, at *7 (D. Neb. Sept. 12, 2018) ("*Heck* was premised on statutory interpretation").  When the Supreme Court construes a federal statute, it declares what the statute has "always meant" – *i.e.*, what the statute "has meant continuously since the date when it became law." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 n.13 (1994).  In other words, "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Id.* at 312-13.  To the extent that *Heck* is a case of statutory construction, it would appear to have been stating a rule that existed at the time of the events at issue in this case.  The Court has not reached any final conclusions on this issue, and it bases no part of its decision on the issue.  It highlights the issue only as one that may warrant further consideration at some point as this case proceeds.

9

No.52, PageID.10188.)   And he says that *Harper* does not require retroactive application of *Heck* here because this case was not pending when *Heck* was decided.

*Harper*, itself, belies this argument in two respects.  First, *Harper* says that a Supreme Court decision must be applied retroactively to *both* "cases still open on direct review" *and* to "all events, regardless of whether such events predate or postdate" the Supreme Court's decision. *Harper*, 509 U.S. at 97.  Thus, the plain language of *Harper* shows that its retroactivity rule is not limited to cases that are pending on direct review.  Second, in *Harper*, the Supreme Court applied one of its earlier decisions retroactively even though *Harper* itself was not pending on direct review – indeed, had not even been filed – when the earlier decision was issued.[5] The actions of the Supreme Court in *Harper* – in addition to the Supreme Court's words in that case – thus confirm a decision of the Supreme Court applies retroactively even to cases that were not pending when the decision was issued.  In

---

[5] The plaintiffs in *Harper* sought a refund of certain state income taxes that they had paid between 1985 and 1988.  They argued that the taxes were unlawful under the Supreme Court's decision in *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803 (1989).  But the plaintiffs' lawsuit had not yet been filed when the Supreme Court decided *Davis*.  The Supreme Court issued *Davis* on March 28, 1989, and the plaintiffs filed their suit in Virginia state court on May 4, 1989. *See Harper v. Virginia Dep't of Taxation*, 401 S.E.2d 868, 870 (Va. 1991) (identifying filing date).  Even though the plaintiffs' lawsuit was not pending in any court when *Davis* was decided, the Supreme Court held that *Davis* applied retroactively to the plaintiff's claims. *See Harper*, 509 U.S. at 100.   Thus, *Harper* demonstrates that the retroactivity of Supreme Court decisions is not strictly limited to cases pending on direct review at the time the decisions are issued.

sum, as another federal court has aptly observed, "the apparent rule of retroactivity [from *Harper*] is that if an event is not yet in litigation, or if a litigated case is not yet final, then the rule will be applied retroactively." *Hoffman v. GEICO Ins. Co.*, 2006 WL 2925265, at *8 (D. Mont. Oct. 5, 2006).[6] Healy's far narrower reading of *Harper* is not faithful to the language or result of that decision.

Notably, Healy has not cited a single case in which any federal court has declined to apply *Heck* retroactively under circumstances like those presented in this case. He cites only one case in which a federal court refused to apply *Heck* retroactively – *Johnson v. City of Cheyenne*, 2017 WL 6551394 (D. Wyo. July 27, 2017). (*See* Healy Supp. Br., ECF No. 52, PageID.10198-10202, citing and discussing *Johnson*). But *Johnson* involved fundamentally different circumstances, and the court in *Johnson* did not suggest that *Heck* was limited to cases pending on direct review when *Heck* was decided.

The plaintiff in *Johnson* was convicted of certain crimes in 1989. In 1991, the plaintiff filed a § 1983 action in which he alleged that misconduct by police and prosecutors led to his wrongful conviction. A federal district court dismissed that action with prejudice on the merits, and the Tenth Circuit affirmed the dismissal. In 1992, the plaintiff filed a second § 1983 action in which he alleged that false

_____

[6] The court in *Hoffman* was deciding an issue of retroactivity under Montana law. But in the course of deciding that issue, the court reviewed and discussed *Harper*.

testimony by a police officer led to his conviction.  A federal district court dismissed the second action, and the Tenth Circuit again affirmed.  "Accordingly, both of the lawsuits" brought by the plaintiff in 1991 and 1992 "resulted in a final judgment on the merits of [the plaintiff's] claims." *Johnson*, 2017 WL 6551394, at *7.  Nearly twenty years later, in 2013, DNA testing proved the plaintiff's innocence, and he was declared actually innocent by a court order issued on August 7, 2013. *See id.* at *4.  The plaintiff then filed a third § 1983 action in 2017 in which he alleged that still more law enforcement misconduct led to his wrongful conviction.

The law enforcement defendants moved to dismiss the third action as barred by *res judicata*.  The plaintiff countered that *res judicata* did not bar his third set of claims because, under *Heck*, the claims did not accrue until he had been declared innocent by court order in 2013.  The plaintiff insisted that "*Heck* should be applied retroactively…." *Id*. at *8.  The court declined to apply *Heck* retroactively because doing so would have effectively voided the *res judicata* effect of the two earlier merits judgments:

> Thus, even if *Heck* applied retroactively to events predating the announcement of that rule of federal law, Plaintiff has cited no authority to support the proposition that *Heck* can be applied retroactively to disregard the res judicata effect of final judgments already entered on his § 1983 claims.  Indeed, the Supreme Court has recognized, 'retroactivity in civil cases must be limited by finality; once suit is barred by res judicata …, a new rule cannot reopen the door already closed.'

*Id.* (quoting *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 541 (1991) (plurality opinion)).

As this passage makes clear, the court in *Johnson* simply applied a well-settled exception to the retroactivity rule established in *Harper* – the exception barring retroactive application of decisions to cases in which a final judgment has been entered and all direct appeals have been exhausted. *See Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995) (explaining that "[n]ew legal principles, even when applied retroactively, do not apply to cases already closed" and that this is "a limitation inherent in the principle [of retroactivity] itself") *Johnson* did not hold, as a general matter, that *Heck* applies retroactively only to cases that were pending when *Heck* was decided. On the contrary, the court acknowledged the possibility that *Heck could* apply retroactively to "events predating" its issuance so long as such application would not undermine an otherwise final judgment. *Johnson*, 2017 WL 6551394, at *8 ("even if *Heck* applied retroactively to events predating the announcement of that rule of federal law….") Thus, *Johnson* does not support Healy's contention that *Heck* cannot apply retroactively to Watkins' claims.

Finally, Healy argues that *Heck* should not apply retroactively for the same reasons that statutes do not apply retroactively. In Healy's words, the Court should be guided by principles concerning the retroactive application of statutes because "the great majority of federal case law interpreting retroactively derives from the

statutory context." (Healy Supp. Br., ECF No. 52 at PageID.10189.) And Healy urges the Court to analogize retroactive application of *Heck* to retroactive application of a Michigan statute of limitations, which, according to Healy, would not be permitted under the circumstances of this action. (*See id.*, citing decisions of the Michigan Court of Appeals concerning Michigan statutes of limitations).

This line of argument is flawed in two important respects. First, there is a "major difference" between principles governing the retroactive application of statutes and the retroactive application of judicial decisions. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 847 (11th Cir. 2018). Indeed, "[t]he principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." *United States v. Security Indus. Bank*, 459 U.S. 70, 79 (1982). Thus, the fact that statutes often do not apply retroactively says little, if anything, about whether judicial decisions should apply retroactively. Second, Healy's analogy to a state statute of limitations is misplaced because the issue before this Court relates to the accrual of Watkins' Due Process fabrication of evidence claim under § 1983, and the accrual of that claim is a matter of federal law. *See*, *e.g.*, *Collyer*, 98 F.3d at 220 (explaining that while § 1983 borrow state statutes of limitations, the accrual of those claims is governed by federal law). Simply put, whether a Michigan statute of limitations (or any other such statute) does

or does not apply retroactively is not germane to the question of whether *Heck* applies retroactively.

In sum, Healy has failed to demonstrate that *Heck* does not apply retroactively to Watkins' Due Process fabrication of evidence claim. And under *Heck*, that claim is timely.

**2**

Watkins' Due Process fabrication of evidence claim is also timely under *McDonough, supra*. In that case, the Supreme Court held that "[t]he statute of limitations for a fabricated-evidence claim … does not begin to run until the criminal proceedings against the defendant (*i.e.,* the § 1983 plaintiff) have terminated in his favor." *McDonough,* 139 S. Ct. at 2154-55. Under *McDonough*, Watkins' Due Process fabrication of evidence claim did not accrue, and the statute of limitations on that claim did not begin to run, until the state trial court vacated Watkins' conviction in 2017. And under *Harper, McDonough* – which was decided while this action was pending in this Court – applies retroactively for all of the reasons explained above. In light of *McDonough*, Watkins' Due Process fabrication of evidence claim is not time-barred.

**B**

The Sixth Circuit's decision in *Dunn v. Tennessee*, 697 F.2d 121 (6th Cir. 1982), compels the conclusion that Watkins' Fourth Amendment malicious

prosecution claim is also not time-barred. In *Dunn*, the Sixth Circuit held "that favorable termination of [a] prior criminal proceeding marks the point at which a [§] 1983 claim for malicious prosecution accrues." *Id*. at 127. The Sixth Circuit then concluded that "the statute of limitations" for a malicious prosecution claim under § 1983 "begins to run at the time of the [favorable] termination of the state [criminal] proceeding." *Id*. Under these rules from *Dunn*, Watkins' Fourth Amendment malicious prosecution claim did not accrue until his conviction was vacated in 2017. Thus, the claim is not time-barred by the applicable three-year statute of limitations.

Healy counters that *Dunn* does not control here because it was decided many years after the alleged misconduct and Watkins' resulting conviction. (*See* Healy Reply Br., ECF No. 54, PageID.10296-10298.) The Court respectfully disagrees. Under *Harper*, published decisions of the courts of appeals – like *Dunn* – apply retroactively in the same way that decisions of the Supreme Court apply retroactively. Indeed, even though "*Harper* dealt with" the retroactivity of a decision "issued by the Supreme Court, various courts of appeals have applied [the *Harper* approach] to retroactivity with respect to their own decisions." *Sodexho Marriott Man., Inc. v. United States*, 61 Fed. Cl. 229, 237 (Ct. Cl. 2004) (collecting cases). *See also Herman v. Hector I. Nieves Transp., Inc.*, 244 F.3d 32, 37-38 (1st Cir. 2001) (same). Most importantly, the Sixth Circuit has held that its own decisions "must be given full retroactive effect" under the *Harper* framework. *In Re*

*Federated Dept. Stores, Inc.*, 44 F.3d 1310, 1317-18 (6th Cir. 1995).  Thus, for all of the reasons that *Heck* applies retroactively to this case under *Harper*, *Dunn* also applies retroactively to this case under *Harper*.  And Watkins' Fourth Amendment malicious prosecution claim is timely under *Dunn*.

### C

Even if the decisions discussed above do not apply retroactively, Watkins' constitutional claims are still timely because, under the best reading of the law in effect during the Healy-described "relevant era" in 1975 and 1976, constitutional claims like those Watkins brings here did not accrue until the plaintiff prevailed in the underlying criminal proceedings.  The Court refers to the "best reading" of the law because, by 1976, the Supreme Court had not yet definitively resolved the question of when constitutional claims like those at issue here accrue.  The Supreme Court did not do that until its decisions in *Heck* and *McDonough*.  But by 1976, the Supreme Court had provided some critical guideposts for analyzing constitutional claims like those brought by Watkins.  By that same time, a number of lower federal courts had determined – by applying those guideposts – that favorable termination of the underlying proceedings *was* an essential element of these types of claims.  And since these claims required a showing of favorable termination, they did not accrue until such a termination had occurred.  Thus, as described in more detail below,

under the best understanding of law in effect in 1975 and 1976, Watkins' constitutional claims did not accrue until his conviction was vacated in 2017.

**1**

"In defining the contours and prerequisites of a § 1983 claim, including its rule of accrual, courts are to look first to the common law of torts." *Manuel v. City of Joliet*, 137 S. Ct. 911, 920-21 (2017).[7] While this admonition is of recent vintage, the Supreme Court has long looked to the common law as a guide in determining the scope and extent of liability under § 1983. *See*, *e.g.*, *Carey v. Piphus*, 435 U.S. 247, 257-58 (1978) (explaining that the "rules" governing the "common law of torts" provide "the appropriate starting point for the inquiry under § 1983 as well.") In fact, the Supreme Court looked to the common law to help discern the boundaries of § 1983 liability long before the events that gave rise to Watkins' claims. *See Kalina v. Fletcher*, 522 U.S. 118, 123 (1997) (identifying the 1951 decision in *Tenny v. Brandhove*, 341 U.S. 67 (1951), as one in which the Supreme Court "recognized that Congress intended [§ 1983] to be construed in the light of common-law principles

---

[7] While common law principles have long guided the interpretation and application of § 1983, it is well-settled that those principles "are meant to guide rather than control the definition of § 1983 claims." *Hartman v. Moore*, 547 U.S. 250, 258 (2012).

that were well settled at the time of its enactment.")[8]  By 1975, "the nexus between

[§] 1983 violations and the common law ha[d] long been recognized." *Colton v.*

*Swain*, 527 F.2d 296, 304 (7th Cir. 1975).

More importantly for purposes of this case, by 1975 federal courts understood

that they needed to consult the common law of malicious prosecution in order to

determine the scope and elements of a malicious prosecution claim under § 1983.

As one federal court explained at that time, the common law tort of malicious

prosecution "provided the controlling legal framework for determining [a

defendant's] liability [for malicious prosecution] under [§] 1983." *Anthony v. White*,

376 F.Supp. 567, 572 (D. Del. 1974).[9]  Other federal courts reached the same

conclusion. *See e.g.*, *Gaito v. Strauss*, 249 F. Supp. 923, 932 (W.D. Pa. 1966)

(construing contours of § 1983 malicious prosecution claim in light of elements of

common law claim); *Tucker v. Duncan*, 499 F.2d 963, 965 n.1  (4th Cir. 1974)

("borrow[ing]" elements of common law malicious prosecution claim and using

them as elements for § 1983 malicious prosecution claim); *Colton*, 527 F.2d at 304

---

[8] *See also Pierson v. Ray*, 386 U.S. 547, 553-55 (1967) (looking to common law to
discern scope of privilege and immunities available to state judge and law
enforcement officers in context of § 1983).

[9] The court in *Anthony* "turn[ed] … to the [common law] of malicious prosecution
to determine not only [the defendant's] liability under state tort law but her liability
under [§] 1983 as well." *Anthony*, 376 F. Supp. at 572.

(likening a § 1983 malicious prosecution claim to a common law claim for malicious prosecution).

Critically, these courts (and others) also determined by 1975 that the favorable termination element of a common law malicious prosecution claim was likewise an element of a § 1983 malicious prosecution claim. *See Tucker, supra* (holding that § 1983 malicious prosecution claim should have been dismissed because plaintiff had failed to show, as required by the common law, that the underlying criminal proceedings terminated in his favor); *Gaito, supra* (holding that since plaintiff failed to satisfy favorable termination element of common law claim for malicious prosecution, plaintiff had no viable § 1983 malicious prosecution claim); *Everett v. City of Chester*, 391 F. Supp. 26, 28 (E.D. Pa. 1975) (explaining that plaintiff's § 1983 malicious prosecution claim failed as a matter of law because plaintiff failed to allege that underlying proceedings terminated in his favor); *Sullivan v. Choquette*, 420 F.2d 674, 676 (1st Cir. 1969).[10]  And two additional decisions issued shortly after the key events in this case further confirmed that during the "relevant era," a § 1983 malicious prosecution plaintiff had to prove that the underlying proceedings

---

[10] As the Sixth Circuit explained in *Dunn*, the First Circuit's opinion in *Sullivan* "is ambiguous as to the precise nature of the claim." *Dunn*, 697 F.2d at 127 n.8. Importantly, however, the Sixth Circuit added that *Sullivan* "has been interpreted to require a termination of the prior proceeding in a manner favorable to the plaintiff for a 1983 malicious prosecution action to lie." *Id.*  That is how the Sixth Circuit read *Sullivan* in *Dunn*. *Id.*  And that is how at least one federal court read *Sullivan* before the events underlying Watkins' claims. *See Everett*, 391 F. Supp. at 28.

had terminated in his favor. *See Morrison v. Jones*, 551 F.2d 939, 940-41 (4th Cir. 1977) ("Since federal law does not define the elements of the [§ 1983 malicious prosecution] claim, we adopt the common law rule that favorable termination of the proceedings is essential. Consequently, the claim does not accrue until the proceedings are terminated."); *Singleton v. New York*, 632 F.2d 185, 194-95 (2d Cir. 1980) ("There remains the question of whether a [§] 1983 claim for deprivation of civil rights through malicious prosecution may be stated without alleging and proving that the prosecution terminated in some manner indicating that the person was not guilty of the offense charged. We believe that such proof is essential.").

These decisions requiring a § 1983 malicious prosecution plaintiff to prove a favorable termination of the underlying proceedings represent the clear weight of authority during the Healy-described "relevant era."  Indeed, Healy has not cited a single case from that time frame in which any federal court specifically held to the contrary. (Much more on that below.)  Thus, the Court may reasonably conclude that if, during the "relevant era" in 1975 and 1976, the Sixth Circuit had been squarely confronted with the question of whether a § 1983 malicious prosecution plaintiff had to prove a favorable termination of the underlying proceedings, that court would have followed the same path as the courts in the cases discussed above.  It would have looked to the common law of malicious prosecution and would have concluded – just as it did a mere seven years later in *Dunn* – that one essential element of a

§ 1983 malicious prosecution claim was favorable termination of the underlying proceedings. Stated another way, it is most reasonable to conclude that during the "relevant era," one essential element of a § 1983 malicious prosecution claim was favorable termination of the underlying proceedings – and that such a claim thus did not accrue until favorable termination.[11]

Because favorable termination was an essential element of a malicious prosecution claim under the law of the "relevant era," Watkins' Fourth Amendment malicious prosecution claim did not accrue under that law until his conviction was vacated in 2017.

---

[11] As noted above, the weight of the case law from the Healy-defined "relevant era" shows that during that era, favorable termination was an essential element of a § 1983 malicious prosecution claim. But even aside from that case law, there is another route to the conclusion that favorable termination was an element of a § 1983 malicious prosecution claim during the "relevant era" in 1975-1976. This route relies upon the rule that "[j]udicial declaration of the law is merely a statement of what the law has always been." *Cash v. Califano*, 621 F.2d 626, 628 (4th Cir. 1980); *see also Jones Stevedoring Co. v. Director, Office of Workers' Comp. Prog.*, 133 F.3d 683, 688 (9th Cir. 1997) ("But when a court delivers a ruling, even if it is unforeseen, the law has not changed. Rather, the court is explaining what the law always was."); *Harper*, 509 U.S. at 106-07 (Scalia, J., concurring) (same). Under this rule, *Heck, McDonough*, and *Dunn* state what "the law [concerning accrual of § 1983 malicious prosecution claims] has always been" – and what it was at the time of the events giving rise to this action. The Court does not rest its decision here on the operation of this rule because it is not yet clear to the Court that the rule has been adopted by any majority of the Supreme Court or by the Sixth Circuit. But if this rule does apply in this Circuit, then that would be a further basis for concluding that Watkins' claims did not accrue under the law as it existed during the "relevant era" in 1975-1976.

The same reasoning applies to Watkins' fabrication of evidence claims. As the Supreme Court highlighted in *McDonough*, a fabrication of evidence claim is in the nature of a common law malicious prosecution claim. *See McDonough*, 139 S.Ct. at 2156. And during the "relevant era," a fabrication of evidence claim was, at times, brought as one for malicious prosecution. *See*, *e.g.*, *Gaito*, 249 F. Supp. at 927 (plaintiff alleged, among other things, that defendants "employed false and perjured evidence" against him, and court analyzed that claim as one for malicious prosecution); *Johnson v. Dailey*, 479 F.2d 86, 88 (8th Cir. 1973) (holding that "action may be properly characterized as one in the nature of malicious prosecution," and applying statute of limitations governing malicious prosecution action, where plaintiff alleged that the defendant used "fabricated facts and falsified evidence" to convict him of murder). Thus, it is fair to conclude that during the "relevant era," a court squarely confronted with the question of when a fabrication of evidence claim accrued would have looked to the common law tort of malicious prosecution and pegged the accrual date for the fabrication claim as the time of favorable termination. On this basis, the Court concludes that under the law of the "relevant era," Watkins' fabrication of evidence claims did not accrue until his conviction was vacated in 2017.

Healy offers a sharply different account of Sixth Circuit law during the "relevant era." He insists that under then-prevailing Sixth Circuit precedent, favorable termination of underlying proceedings was *not* an essential element of a § 1983 malicious prosecution claim. Healy says that, in fact, "[t]he law was precisely the opposite – that those convicted were required to be prompt in asserting § 1983 claims [even before favorable termination] or otherwise forfeit them under the statute of limitations." (Mot. for Reconsid., ECF No. 49, PageID.10092; emphasis in original.) As support for this contention, Healy relies primarily upon the Sixth Circuit's decision in *Krum v. Sheppard*, 407 F.2d 490 (1967). While *Krum* may initially appear to support Healy's view of the law, on closer inspection, it becomes clear that (1) *Krum* did not involve any *holding* as to whether favorable termination was an element of a § 1983 malicious prosecution claim, and (2) *Krum* cannot be read to dispense with the favorable termination element.

The plaintiff in *Krum* was arrested for and charged with interfering with a police officer in 1959. He was tried on that charge in a Michigan state court and convicted in 1961, and the Michigan Supreme Court later affirmed his conviction. In 1965, the plaintiff brought a number of § 1983 claims against the arresting and investigating officers – including a claim for malicious prosecution. The plaintiff alleged, among other things, that the officers had testified falsely against him at his

preliminary examination and trial.  At the time the plaintiff brought these claims, he had not obtained relief from his criminal conviction.

The defendants moved to dismiss the claims as time-barred.  They argued that the plaintiff's claims were subject to Michigan's three-year statute of limitations for personal injury claims.  The plaintiff countered that his claims were instead subject to a six-year statute of limitations.  As the district court explained, the resolution of the motion turned exclusively on which statute applied:

> The statute which was in effect at the time any cause of action may have accrued to the plaintiff is M.S.A. § 27.605, Comp.Laws 1948, § 609.13, which read in pertinent parts, as follows:
>
>> 'All actions in any of the courts of this state shall be commenced within 6 years next after the causes of action shall accrue, and not afterward, except as hereinafter specified: Provided, however, 1. * * * 2. Actions to recover damages for injuries to person or property and actions for trespass upon lands shall be brought within 3 years from the time said actions accrue, and not afterwards; 3. Actions * * * for false imprisonment, for malicious prosecution, * * * shall be brought within 2 years from the time the cause for action accrues, and not afterwards.' (Emphasis supplied.)
>
> The plaintiff contends that none of the enumerated exceptions apply to a cause of action under the Civil Rights Act, and that the general six-year provision therefore governs. The defendants contend that subsection 2 applies. If defendants' contention is correct, then plaintiff's action is barred inasmuch as the complaint in this action was filed on September 24, 1965, 5 years and

> 363 days after the alleged illegal search and arrest, and four years and five months after the criminal trial.
>
> *The question which this court must decide is whether an action for deprivation of civil rights is one 'for injuries to person or property' within the meaning of M.S.A. § 27.605(2), Comp.Laws 1948, § 609.13(2).*

*Krum*, 255 F. Supp. at 996-97 (emphasis added; internal footnote omitted). The district court ruled that the three-year personal injury statute applied, and the Sixth Circuit affirmed that ruling "for the reasons set forth" in the district court's opinion and without any independent analysis of its own. *Id.* at 491.

It is true, as Healy notes, that Sixth Circuit in *Krum* appeared to proceed on the assumption that the plaintiff's § 1983 malicious prosecution claim had accrued even absent favorable termination of the underlying criminal proceedings. But because *Krum* involved only a dispute concerning which statute to apply, neither the district court nor the Sixth Circuit issued any *holding* as to whether favorable termination was an essential element of a § 1983 malicious prosecution claim. *See Wright v. Spaulding*, 939 F.3d 695, 700-05 (6th Cir. 2019) (carefully describing how to determine the "holding" of a decision and explaining that the holding is limited to the specific question actually presented by the parties and considered by the court). At most, we can conclude that the parties in *Krum* may have assumed that favorable termination was not required and that the courts acquiesced in that assumption. Such acquiescence does not amount to a holding. *See id.* Since neither party raised the

favorable termination issue and since the Sixth Circuit did not consider that issue, it would read too much into *Krum* to say that it establishes that favorable termination was not an essential element of a § 1983 malicious prosecution claim.  For the reasons explained above in Section (II)(C)(1), the Court remains firmly convinced that if the favorable termination issue had been squarely presented in *Krum*, the Sixth Circuit would have found such termination to be an essential element of a § 1983 malicious prosecution claim – just as the other courts cited above did before 1975 and just as the Sixth Circuit did in *Dunn*.

Moreover, the decision in *Dunn* provides further evidence that *Krum* did not hold that favorable termination is not an essential element of a § 1983 malicious prosecution claim.  As noted above, in *Dunn* (decided fifteen years after *Krum*), the Sixth Circuit held that favorable termination *is* an essential element of a § 1983 malicious prosecution claim.  If, as Healy insists, *Krum* stood for the opposite proposition, then the panel in *Dunn* could not have held as it did. *See Timmereck v. United States*, 577 F.2d 372, 376 n.15 (6th Cir. 1978) (recognizing before *Dunn* was decided that one panel of the Sixth Circuit may not overrule another panel), *rev'd on other grounds U.S. v. Timmereck*, 441 U.S. 780 (1979).  It seems impossible to reconcile Healy's reading of *Krum* with the decision in *Dunn*.

Finally, *Dunn* undermines Healy's reading of Sixth Circuit law during the "relevant era" in another important respect.  Healy contends that during the "relevant

era" it was obvious to judges and litigants alike in this Circuit that favorable termination was not an essential element of a § 1983 malicious prosecution claim. If that was correct, then *Dunn* would have represented a monumental shift in the law of this Circuit. But the Sixth Circuit in *Dunn* did not even hint that it was breaking from past precedent. That further belies Healy's claim that, during the "relevant era" in this Circuit, favorable termination was not an essential element of a § 1983 malicious prosecution claim.

**3**

Healy also cites a number of other cases for the proposition that favorable termination of the underlying proceedings was not an essential element of a § 1983 claim during the "relevant era." (*See* Mot. for Reconsid., ECF No. 49, PageID.10090-10094.) In each of these cases, courts allowed plaintiffs to pursue § 1983 claims related in some way to an underlying criminal matter. And none of the courts suggested that favorable termination was an essential element of the plaintiffs' claims. Healy contends that these decisions, like *Krum*, establish that favorable termination was not an essential element of a § 1983 claim during the "relevant era."

However, the cases cited by Healy are distinguishable and do not control the accrual questions presented in this case because they either:

- Involved a § 1983 claim *other* than malicious prosecution or a § 1983 claim for which malicious prosecution was not the most analogous common law tort, and therefore the favorable termination element was not relevant;

- Did not involve a *holding* as to whether favorable termination was an essential element of the plaintiff's § 1983 claim, and/or

- Did not involve a claim that called into question the underlying conviction and therefore did not implicate the delayed-accrual recognized in *Heck*.[12]

---

[12] *See Crawford v. Zeitler*, 326 F.2d 119 (6th Cir. 1964) (did not involve holding as to whether favorable termination was an essential element of the plaintiff's § 1983 malicious prosecution claim); *Mulligan v. Schlacter*, 389 F.2d 231, 233 (6th Cir. 1986) (claims arose out of an "allegedly unlawful arrest and search by the police officers," case did not involve a § 1983 malicious prosecution claim, and therefore favorable termination element was not relevant); *Lilly v. Consoldane*, 636 F.2d 1218 (6th Cir. 1980) (district court decision affirmed without opinion, and thus case did not include any holding related to favorable termination element of § 1983 malicious prosecution claim); *Allen v. McCurry*, 449 U.S. 90 (1980) (claim arose out of allegedly unconstitutional search and seizure, case did not involve a § 1983 malicious prosecution claim, and therefore favorable termination element was not relevant); *Haring v. Prosise*, 462 U.S. 306, 308 (1983) (plaintiff sought damages against officers who "participated in the [unlawful] search of [plaintiff's] apartment," case did not involve a § 1983 malicious prosecution claim, and therefore favorable termination element was not relevant); *Briscoe v. Lahue*, 460 U.S. 325 (1983) (did not involve holding as to whether favorable termination was an essential element of the plaintiff's § 1983 claim); *Briscoe v. Lahue*, 663 F.2d 713 (7th Cir. 1981) (did not involve holding as to whether favorable termination was an essential element of the plaintiff's § 1983 claim); *Prosise v. Haring*, 667 F.2d 1133, 1134 (4th Cir. 1981) (plaintiff alleged that "officers violated his constitutional rights by using excessive force in arresting him and by conducting a search and seizure," case did not involve a § 1983 malicious prosecution claim, and therefore favorable termination element was not relevant); *Johnson v. Mateer*, 625 F.2d 240 (9th Cir. 1980) (claim arose out of allegedly illegal search, case did not involve a § 1983 malicious prosecution claim, and therefore favorable termination element was not relevant); *Bethea v. Reid*, 445 F.2d 1163 (3d Cir. 1971) (did not involve holding as to whether favorable termination was an essential element of the plaintiff's § 1983 claim).

Admittedly, not all of the cases cited by Healy are irrelevant. In at least some of the cases, the courts allowed the plaintiffs to pursue § 1983 claims in the nature of malicious prosecution claims even though the plaintiffs had not prevailed in the underlying criminal proceedings. *See*, *e.g.*, *Crawford v. Zeitler*, 326 F.2d at 119. And that is at least some evidence that, as Healy contends, favorable termination was not an element of these claims. Indeed, it is not necessarily unreasonable to argue, as Healy does, that if favorable termination truly was an essential element of these claims, then (1) the defendants in these cases would have sought dismissal of the claims for lack of such termination and (2) the courts would have dismissed the claims on that basis.

But for the same reason that the Court rejected Healy's reading of *Krum*, the Court respectfully concludes that Healy reads too much into these cases. The cases are not especially persuasive on the favorable termination question because they did not directly address that issue. In contrast, as set forth above, every court that did actually confront that question during the "relevant era" concluded that favorable termination was an essential element of a § 1983 malicious prosecution claim. In short, the cases cited by the Court above in Section (III)(C)(1), not the ones cited by Healy, represent the prevailing rule concerning favorable termination during the "relevant era."

For all of the reasons explained above, Healy has not persuaded the Court it erred when it concluded that during the "relevant era," favorable termination of the underlying proceedings was required for a § 1983 claim in the nature of malicious prosecution.

## III

The Court next turns to Healy's contention that the Court erred when it ruled that he was not entitled to absolute immunity from Watkins' federal claims. The Court held that (1) the applicable standard for determining whether Healy was entitled to absolute immunity with respect to these claims was described in the Supreme Court's decision in *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), (2) under *Buckley*, a prosecutor is entitled to absolute immunity "only when he is 'functioning as [an] 'advocate[]' with respect to activities 'intimately associated with the judicial phase of the criminal process' and is not entitled to absolute immunity when he "'performs the investigative functions normally performed by a detective or police officer,'" and (3) Healy was not entitled to absolute immunity "at this time" because Watkins had plausibly alleged that Healy was "performing 'investigative functions' and [] was not acting as an 'advocate' with respect to activities 'intimately associated with the judicial phase of the criminal process.'" (Op. and Order, ECF No. 47, PageID.9974-9985, quoting *Buckley*, 509 U.S. 271-274.)

Healy argues that the Court erred in applying the *Buckley* standard because it was adopted many years after his alleged misconduct. In addition, Healy contends that even if his conduct may be judged under the *Buckley* standard, the Court wrongly concluded that he is not entitled to immunity under that standard. The Court respectfully disagrees on both points.

## A

For all of the reasons explained above in Section (II)(A)(1)(b), *Harper* requires this Court to apply *Buckley* retroactively even though *Buckley* was decided many years after Healy's alleged conduct.

Healy resists retroactive application of *Buckley* on fairness grounds. He contends that *Buckley* "significantly narrowed the scope of absolute immunity," and he says that it would be "unfair" to hold him to the *Buckley* standard when he acted in reliance on the broader immunity available to him when he interacted with Watkins. (Mot. for Reconsid., ECF No. 49, PageID.10098.) This objection to the retroactive application of *Buckley* fails for two reasons.

First, *Harper* squarely rejected the contention that a party may escape retroactive application of a Supreme Court decision on the ground that it relied upon the rule displaced by the decision. The Supreme Court stressed that its decisions must be applied retroactively notwithstanding "the particular equities of individual parties' claims of actual reliance on an old rule and of harm from a retroactive

application of the new rule." *Harper*, 509 U.S. at 97 (internal punctuation omitted). *See also Reynoldsville Casket Co.*, 514 U.S. at 753-54 (confirming that Supreme Court decisions apply retroactively notwithstanding a party's claimed "reliance" on old rule).

Second, and in any event, for all of the reasons explained in the Court's Opinion and Order, the law of the Sixth Circuit at the time of Healy's alleged conduct *was* essentially in accord with the *Buckley* standard. (*See* Op. and Order, ECF No. 47, PageID.9982-9985.) Thus, *Buckley* did not materially "narrow" the scope of immunity that Healy may have enjoyed when he interacted with Watkins. As the Court noted, several years before Healy came into contact with Watkins, the Sixth Circuit explained that "acts which were outside [a prosecutor's] quasi-judicial capacity and beyond the scope of duties constituting an integral part of the judicial process" were not entitled to absolute immunity. *Hilliard v. Williams*, 465 F.2d 1212, 1218 (6th Cir. 1972). This test for immunity is not meaningfully distinguishable from the test adopted in *Buckley*. Thus, there is no unfairness in applying the *Buckley* standard to Healy here.

Healy counters that the Court looked to the wrong cases when it concluded that the scope of immunity available to him at the relevant time was essentially the same as that established under *Buckley*. According to Healy, "[a]s of 1976, the only law governing absolute immunity for § 1983 suits against prosecutors in the Sixth

Circuit was *Imbler v. Pachtman*[, 424 U.S. 409, 430 (1976)]." (Mot. For Reconsid., ECF No. 49, PageID.10095.)  Healy contends that *Imbler* did not recognize the distinction later drawn in *Buckley* between a prosecutor's investigative acts (for which he did not enjoy absolute immunity) and his quasi-judicial acts (for which he did). (*See id.*)  And Healy highlights that after *Imbler*, the Sixth Circuit vacated its earlier 1972 decision in *Hilliard* (cited above) that recognized limitations on prosecutorial immunity. (*See id.*, citing *Hilliard v. Williams*, 540 F.2d 220 (1976)). Healy contends that under *Imbler* and the later Sixth Circuit decision in *Hilliard*, he enjoyed broad absolute immunity even for actions taken in an investigative capacity.

The problem with this line of argument is one of timing.  As the Court carefully explained in its earlier Opinion and Order, *Imbler* was decided *after* Healy's alleged misconduct in this case, and the Sixth Circuit likewise issued its final decision in the *Hilliard* case *after* Healy's alleged misconduct. (*See* Op. and Order, ECF No. 47, PageID.9982-9984 & n. 11.)  *At the time of Healy's purported misdeeds*, he did not enjoy blanket absolute immunity, nor did he enjoy an immunity as broad as that arguably recognized in *Imbler*. (*See id.*)  Instead, under the *Buckley*-like test for prosecutorial immunity in effect in this Circuit at that time, Healy *was* subject to liability for alleged misconduct committed in an investigative capacity. (*See id.*)  Thus, applying a *Buckley*-like test for immunity here would not unfairly nor retroactively strip Healy of an immunity he enjoyed at the time of his actions.

34

Healy is correct that the law of the Sixth Circuit changed for a period time from 1976 (after his alleged misconduct) until the Supreme Court's decision in *Buckley*. During this time, as Healy notes, it appears that prosecuting attorneys in this Circuit enjoyed a broader scope of absolute immunity. But Healy never adequately explains why this period of broader immunity is relevant here. This broader immunity did not exist when Healy acted, so he could not have relied upon it (even if reliance was relevant to retroactivity analysis, which it is not under *Harper*). Moreover, during the period that this broader prosecutorial immunity did appear to exist (from *Imbler* in 1976 to *Buckley* in 1993), Watkins' federal claims had not yet accrued (for all of the reasons explained above). Thus, the period during which Healy may have enjoyed a broader immunity has no bearing on Watkins' federal claims. For all of these reasons, the Court concludes that it properly evaluated Healy's claim of absolute immunity under a *Buckley*-like test that denies such immunity for acts taken by a prosecutor in an investigative capacity.

**B**

The Court now turns to Healy's contention that the Court misapplied the *Buckley* standard. The Court held that under that standard, Healy was not entitled to absolute immunity at this stage of the proceedings:

> Watkins plausibly alleges that at the time Healy fabricated Herndon's statement, Healy (1) was performing "investigative functions" and (2) was not acting as an "advocate" with respect to activities "intimately

35

> associated with the judicial phase of the criminal process"
> *Id.* Healy's alleged fabrication of that statement took
> place before there was probable cause to arrest Watkins,
> before any charges were filed against Watkins, and before
> the judicial process against Watkins began. Indeed,
> Watkins' plausibly alleges that the alleged purpose of
> coercing Herndon into identifying Watkins as Ingram's
> killer was to create the evidence needed to establish
> probable cause so that the judicial process could begin.
> Simply put, Watkins fairly alleges that Healy was
> "perform[ing] the investigative functions normally
> performed by a detective or police officer," *id.* at 273,
> when Healy fabricated the evidence that led to Watkins'
> pre-conviction detention, and therefore Healy is not
> entitled to absolute immunity from Watkins' Fourth
> Amendment claims at the pleadings stage.

(Opinion and Order, ECF No. 47, PageID.9976.) After explaining this basis for the denial of absolute immunity at this time, the Court explained in detail how relevant Sixth Circuit precedent confirmed that absolute immunity should be denied, and the Court also distinguished the Sixth Circuit cases Healy cited in which that court upheld claims of absolute prosecutorial immunity. (*See id.* at PageID.9976-9982.)

In Healy's motion for reconsideration, he focuses closely on the Court's statement that probable cause did not exist at the time of his alleged misconduct. Healy insists that (1) under Watkins' own allegations, probable cause *did* exist at the time Healy allegedly fabricated Travis Herndon's statement that incriminated Watkins and (2) therefore, as matter of law, he is absolutely immune for that alleged fabrication. For at least three reasons, the Court declines to reconsider its ruling that Healy is not yet entitled to absolute immunity.

36

First, Healy places too much emphasis on the Court's reference to the lack of probable cause. The Court did not deny absolute immunity to Healy based solely upon its conclusion that, as alleged by Watkins, probable cause was lacking when Healy fabricated Herndon's statement. Instead, as the quoted excerpt from the Court's ruling above demonstrates, the Court concluded that Watkins' allegations, as a whole, plausibly assert that Healy was acting in an investigative capacity, not a quasi-judicial one, when he fabricated Herndon's statement. The Court stands by that conclusion.

Second, even if (as Healy contends) probable cause did exist at the time Healy alleged fabricated Herndon's statement, that would not automatically entitle Healy to absolute prosecutorial immunity under *Buckley*. As the Supreme Court explained in that decision, "a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards. Even after that determination … a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity." *Buckley*, 509 U.S. at 274 n. 5.

Third (and in any event), Watkins does plausibly allege a lack of probable cause at the time Healy fabricated Herndon's statement. Watkins contends that (1) Herndon made a statement to Defendant Neil Schwartz, then an officer with the Detroit Police Department, implicating Watkins in the Yvette Ingram murder, (2) Herndon later retracted his statement implicating Watkins, and (3) after that

retraction, Healy and Schwartz forced Herndon to make a tape-recorded statement falsely implicating Watkins. (*See* Am. Compl. at ¶¶ 16, 23, 30, ECF No. 30, PageID.7491, 7493-7494.)  It is reasonable to infer from these allegations that if probable cause to charge Watkins for the Ingram murder existed for some short period of time after Herndon's initial statement implicating Watkins, the probable cause had dissipated by the time Healy and Schwartz forced Herndon to make the recorded statement.  The dissipation occurred as a direct result of Herndon's recantation.  In other words, it is reasonable to infer from Watkins' allegations that Healy and Schwartz forced Herndon to make the tape-recorded statement in order to re-establish probable cause that no longer existed after Herndon's recantation. Simply put, Watkins plausibly alleges that when Healy fabricated Herndon's statement, Healy was acting like a police officer and was attempting to establish probable cause at a time it was lacking.  Given that plausible allegation (and for all of the other reasons explained above and in the Court's original ruling), Healy is not entitled to absolute immunity at this stage.

None of the cases cited by Healy in his Motion for Reconsideration are to the contrary.  Healy argues that *Buckley* supports his assertion of absolute immunity because, unlike in *Buckley*, probable cause did exist when he (Healy) allegedly fabricated Herndon's statement. (*See* Mot. to Reconsid., ECF No. 49, PageID.10102.)  But as explained above, Watkins plausibly alleges that probable

cause did not exist at the time of Healy's fabrication, and, in any event, *Buckley* does not guarantee immunity for all action by a prosecutor taken once probable cause exists.

Healy next cites *Ireland v. Tunis*, 113 F.3d 1435 (6th Cir. 1997), for the proposition that "a prosecutor's evaluation and investigation of evidence that would support an arrest warrant is absolutely immunized." (Mot. to Reconsid., ECF No. 49, PageID.10102-10103.)  The holding of *Ireland* was not that broad.  The Sixth Circuit held in that case that the prosecutor-defendants were entitled to absolute immunity "for deciding to file a criminal complaint against [the plaintiff], authorizing and preparing the complaint, seeking a warrant for her arrest, and, in the case of [one of the defendants] presenting the charging documents to the judge." *Ireland*, 113 F.3d at 1447.  The defendants had immunity for these actions because they "were advocacy functions intimately associated with *the judicial phase* of the criminal process." *Id.* (emphasis added).  Here, Healy did not take any of the actions described by the Sixth Circuit in *Ireland*, and the actions he did take were not "intimately associated with the judicial process."  *Ireland* does not support Healy's claim of absolute immunity.

Finally, Healy cites *Safar v. Tringle*, 895 F.3d 241, 250 (4th Cir. 2017), for the proposition that "[w]hen probable cause exists for an arrest warrant, and then at some point probable cause is later undermined, prosecutors have absolute immunity

for failing to withdraw wrongful arrest warrants." (Mot. for Reconsid., ECF No. 49, PageID.10103.) But the Fourth Circuit in *Safar* stressed, among other things, that (1) under the law of jurisdiction in which the warrants had issued, the withdrawal of a warrant required the filing of a motion in court and (2) deciding whether to withdraw a judicially issued warrant is an "advocacy function" involving the exercise of a "prosecutor's fundamental judgment." *Safar*, 895 F.3d at 249-50. Here, Healy's alleged decision to fabricate Herndon's statement was not connected to any court filing by Healy, and, as alleged by Watkins, Healy's fabrication did not involve the exercise of prosecutorial judgment concerning whether to pursue a criminal charge. On the contrary, Watkins alleges that a different prosecutor made the discretionary decision, after reviewing the fabricated statement, to seek charges against Watkins. (*See* Am. Compl. at ¶40, ECF No. 30, PageID.7496-7497.) The circumstances of *Safar* bear little resemblance to those alleged by Watkins.

For all of these reasons, Healy has not persuaded the Court that it erred when it ruled that he is not entitled to absolute immunity at this stage of the proceedings.

## C

The Court now turns to one last point concerning immunity made by Healy. In a footnote in Healy's motion for reconsideration, he argues that he may be entitled to *qualified* immunity because he was not "on notice whether absolute immunity would apply to [his] particular conduct." (Mot. for Reconsid., ECF No. 49,

PageID.10098 n. 5.) He appears to contend, in other words, that he is entitled to qualified immunity because a prosecutor in his position could reasonably, even if mistakenly, have believed that, if sued by Watkins, he would have been able to assert absolute immunity as a defense to Watkins' claims.

This argument focuses on the wrong type of knowledge. In the qualified immunity context, the relevant question is whether a reasonable person in the defendant's position would have known that his *conduct* was unlawful. *See*, *e.g.*, *Jackson v. City of Cleveland*, 925 F.3d 793, 813 (6th Cir. 2019) ("[O]fficers sued under the aegis of § 1983 are protected from liability by the doctrine of qualified immunity insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") (internal quotation marks omitted).[13] As the Second Circuit has explained, the relevant knowledge is "knowledge of primary conduct – action of an official that would violate constitutional limitations. It has nothing to do with secondary conduct of litigation of a claim of constitutional violation." *United States v. City of New York*, 717 F.3d 72, 92 (2d Cir. 2013). And in 1975 and 1976 (and likely well before that time), a reasonable person in Healy's position would clearly have known that he

_____

[13] *See also Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("For a constitutional right to be clearly established, *its* contours must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right.") (emphasis added; internal quotation marks omitted).

could not fabricate evidence to support a criminal charge and prosecution. *See Jackson*, 925 F.3d at 826. Thus, Healy's understanding in 1975 and 1976 as to when and whether he could assert prosecutorial immunity as a defense in litigation has no bearing on whether he is entitled to qualified immunity in this action.

## IV

Finally, the Court turns to Healy's assertion that the Court erred when it held that, at this time, Healy is not entitled to absolute immunity under state law with respect to Watkins' common-law claims. The Court held that Healy is not entitled to immunity under Michigan law because (1) "Michigan law with respect to prosecutorial immunity generally follow[ed] the federal standard" and (2) given Watkins' allegations, Healy is not entitled to immunity under that standard. (Op. and Order, ECF No. 47, PageID.9993.) Healy now says that Michigan law does not track the federal standard discussed above and that, instead, prosecutorial immunity under Michigan law is much broader. In support of that contention, Healy relies primarily on the Michigan Court of Appeals' decision in *Bloss v. Williams*, 166 N.W.2d 520 (Mich. Ct. App. 1968).

*Bloss* is hardly a model of clarity. It first quotes federal decisions that appear to apply the functional test for prosecutorial immunity later adopted by the Supreme Court in *Buckley*. *See id.* at 523 (quoting *Bauers v. Heisel*, 361 F.2d 581, 589 (3d Cir. 1966)). But *Bloss* then quotes other decisions that appear to suggest that a public

official has immunity whenever he acts within the scope of his duties. *See id.* at 524 (citing *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)). The back-and-forth discussion of the legal principles in *Bloss* is at best ambiguous.

The key question for the Court with respect to *Bloss* is: did the court in that case cloak the prosecutor with absolute immunity under Michigan law that the prosecutor would not have enjoyed under the federal *Buckley* standard? If the court in *Bloss* did so, then *Bloss* would be strong authority for Healy's argument that this Court erred when it equated Michigan and federal law of prosecutorial immunity.

Healy has not made a convincing showing that the court in *Bloss* actually gave the prosecutor an immunity under Michigan law that the prosecutor would not have enjoyed under the federal standard. Healy's motion does not offer a detailed analysis of whether the prosecutor in *Bloss* would have enjoyed absolute immunity under federal law. And there is at least some reason to believe that the prosecutor in *Bloss* may have been absolutely immune under both Michigan and federal law. The court in *Bloss* suggested that the decision to prosecute may have been made *prior to* the complained-of acts by the prosecutor. More specifically, it noted that the prosecutor "directed a seizure of evidence *to aid in the prosecution*" and was "gathering … evidence *in the preparation of the case*." *Bloss*, 166 N.W.2d at 524 (emphasis added). If that's true, the actions of the prosecutor may have been "intimately associated with the judicial phase of the criminal process," and thus the prosecutor

may have been entitled to immunity under *Buckley*. *Buckley*, 509 U.S. at 274. Simply put, Healy has not yet persuaded the Court that the result in *Bloss* so conflicts with the standard from *Buckley* that *Bloss* conflicts with the federal standard for absolute immunity. Accordingly, the Court again declines to hold that Healy is entitled to absolute immunity under Michigan law at this time.

## V

For all of the reasons stated above, Healy's motion for reconsideration (ECF No. 49) is **DENIED**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: December 19, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 19, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764